737 So.2d 124 (1999)
Dr. Judith Block REMET, et al.
v.
Lisa MARTIN, B.C.S.W., et al.
No. 98-CA-2751.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1999.
*125 Scott R. Bickford, John R. Martzell, M. Suzanne Montero, Richard A. Filce, Martzell & Bickford, New Orleans, Louisiana, Attorneys for Plaintiffs-Appellants Dr. Judith Block Remet and Anna Remet.
Deborah A. Van Meter, Margaret Diamond, McGlinchey Stafford, New Orleans, Louisiana, Attorneys for Defendants-Appellees, Lisa Martin and American Home Assurance Company.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN A. PLOTKIN and Judge CHARLES R. JONES.
KLEES, Chief Judge.
In this medical malpractice action, plaintiffs appeal from a summary judgment rendered by the trial court dismissing one of the defendants and her insurer. For reasons stated fully herein, we reverse and remand.

Facts and Procedural History
The facts and procedural history of this case were accurately stated in a previous opinion of this Court, Remet v. Martin, et al, 97-0895 (La.App. 4 Cir. 12/10/97), 705 So.2d 1132, 1133:
Dr. Henry Remet was admitted to River Oaks Psychiatric Hospital (hereinafter referred to as "River Oaks") on November 20, 1993. He committed suicide by hanging himself, using his belt and the shower head in his room. The *126 plaintiffs, his wife and daughter, sought and obtained a medical review panel as to Dr. George Daul, the treating psychiatrist, and River Oaks Psychiatric Hospital. The panel concluded Dr. Daul failed to comply with the standard for appropriate care and that if three phone calls were made regarding the patient's suicidal nature, then River Oaks failed to meet the applicable standard for failing to note the phone calls.
A survival action and wrongful death lawsuit was then filed naming Lisa Martin, the social worker, Dr. Daul, River Oaks Psychiatric Hospital and others as defendants. Dr. Daul and the plaintiffs settled for $100,000.00, the statutory maximum for which a qualified health care provider is personally liable.
Thereafter, River Oaks was dismissed on a motion for summary judgment. Ms. Martin and River Oaks both filed motions for summary judgment based on the legal theory that settling with one qualified health care provider for the statutory maximum automatically released all other qualified health care providers. The plaintiffs did not oppose the motion for summary judgment filed by River Oaks, however, they did oppose Ms. Martin's motion on the grounds that "she was not entitled to be released from the suit because, among other reasons, she was not a qualified health care provider." Ms. Martin's motion for summary judgment was granted on January 24, 1997 after a finding that she was a River Oaks employee and, as such, was considered a qualified health care provider entitled to a release.
In the previous case, plaintiffs appealed from this summary judgment, and this Court reversed based on the fact that although Ms. Martin had proven she was an employee of River Oaks, she had failed to produce evidence that she was a qualified health care provider under the Louisiana Medical Malpractice Act. The Court therefore remanded the case to the trial court for a determination of whether Ms. Martin met the requirements of a qualified health care provider under the Act. Based on this determination, this Court did not reach Ms. Martin's claim on appeal that plaintiffs' release of one qualified provider entitled all such providers to a judgment of dismissal.
On remand, Ms. Martin filed a second motion for summary judgment presenting as proof of her qualified status a Certificate of Enrollment from the Louisiana Patient's Compensation Fund issued in the name of River Oaks Hospital dated May 21, 1998, which states as follows:
Pursuant to the Judgement of the Louisiana Fourth Circuit Court of Appeal in the case styled Judith Block Remet, et al. v. Lisa Martin, B.C.S.W. Lisa Martin was an employee of River Oaks Hospital for the enrollment period of 1/1/93 through 1/1/94 and was, therefore, a qualified health care provider in accordance with La. R.S. 40:1299.41 et seq.
By judgment dated July 20, 1998, the trial court in the instant case granted summary judgment, dismissing plaintiffs' claims against Lisa Martin and her insurer. Although plaintiffs requested written reasons for judgment, no reasons appear in the record before us. On August 11, 1998, the trial court granted plaintiffs' motion for devolutive appeal from the judgment rendered on July 20, 1998.

Appealability of the Judgment
We must first consider whether the judgment appealed from in this case is a final judgment pursuant to La. C.C.P. art. 2083.[1] Because it was unclear from the record whether the judgment herein was a final judgment or a partial judgment governed by La. C.C.P. art.1915, we ordered *127 the parties to show cause on briefs only why this judgment should not be dismissed as an appeal from an uncertified partial judgment. Briefs from both parties were filed in this Court on February 19, 1998, and we have considered the issue based on the particular circumstances of this case.
Generally, a summary judgment which dismisses one or more of several co-defendants, but not the entire litigation, is a partial judgment pursuant to La. C.C.P. art. 1915. La. C.C.P. art.1915 was amended by Acts 1997, No. 483, § 2 and became effective on July 1, 1997. Under La. C.C.P. art. 1915(A)(1), a final judgment may be rendered and signed by the court, even though it may not grant all of the relief prayed for or may not adjudicate all of the issues in the case, when the court "(d)ismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors," or grants a partial summary judgment pursuant to La. C.C.P. art. 966(E). La. C.C.P. art. 1915(B)(1) provides that when a court renders a partial judgment or partial summary judgment as to one or more but less than all of the parties, whether in an original demand, reconventional demand, cross-claim, third-party demand or intervention,
the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
Further, La. C.C. P. art. 1915(B)(2) dictates:
In the absence of such a determination and designation, any order or decision which adjudicated fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal.
In the present case, the judgment appealed from dismisses the last named defendants from the lawsuit. However, the litigation is not concluded as the issue of excess damages must be tried against the Louisiana Patients' Compensation Fund (hereinafter "the Fund."). In briefs filed in this court, both parties contend that the judgment appealed from is final and immediately appealable, although claims against the Fund have yet to be resolved. We have been unable to find, nor do the parties cite, any controlling jurisprudence on this subject, and the issue appears to be res nova in Louisiana.
After a careful review of this issue, we conclude that the judgment appealed from is a final judgment that is immediately appealable. In reaching this conclusion, we have considered the unique status of the Fund as contemplated by the express provisions of the state statute, and this determination is thus limited by the facts presented here.
According to the jurisprudence interpreting the Medical Malpractice Act, the position of the Fund is sui generis; it is a creature of statute and has only those rights expressly given to it by the legislature. Mumphrey v. Gessner, 581 So.2d 357, 360 (La.App. 4th Cir.) writ denied, 587 So.2d 694 (La.1991). The standing of the Fund in a medical malpractice case has been discussed by this Court in Kelty v. Brumfield, 534 So.2d 1331, 1333 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1221 and 536 So.2d 1222 (La.1989):
The Medical Malpractice Act does not contemplate the Fund as a party defendant. Williams v. Kushner, 449 So.2d 455 (La.1984) The Fund is a "budget unit" of the State. La.R.S. 40:1299.44(A)(5)(g). The functions of administering the Fund are carried out by the commissioner of insurance. La. R.S. 40:1299.44(A)(5)(b). The act does not give the Fund status as a co-obligor or insurer of the health care provider. It is a creature of the legislature designed to satisfy settlements and/or judgments against health care providers in excess of $100,000.00. The Fund does *128 not have to be made a party to the litigation, nor cast in judgment in order to disburse its funds. The only requirement is a final judgment or a court approved settlement, or a final arbitration award, against the health care provider in excess of one hundred thousand dollars. La. R.S. 40:1299.44(B)(2)(a-c).

In addition, the Fund cannot contest liability when there is a binding settlement by a health care provider for $100,000.00. The only remaining issue is that of damages. Schwarzenburg v. Jackson, 600 So.2d 163 (La.App. 5th Cir.1992).
In the instant case, the Fund was not named as a party defendant in any of plaintiffs' pleadings. Rather, the Fund was brought into the case as required by the statute to approve the settlement with Dr. Daul and for damages in excess of the settlement amount. As the Fund is not considered to be a party defendant or co-obligor in this matter and was not named as such in plaintiffs' lawsuit, we conclude that the provisions of La. C.C.P. article 1915 are inapplicable to this case. At the time the judgment was entered, all of the claims by and against all of the parties had been decided. Thus, the dismissal of Lisa Martin and her insurer amounts to the dismissal of the last named defendants in this lawsuit, and the judgment is therefore considered to be final. This is true in spite of the circumstances peculiar to malpractice cases where the litigation continues beyond the dismissal of the named defendants to a consideration of the amount of excess damages payable by the Fund. For the reasons stated, we find that the judgment appealed from herein is a final judgment and is immediately appealable pursuant to La. C.C.P. art.2083.
We turn next to the merits of the issues presented by plaintiffs' appeal.

Status as Health Care Provider
Plaintiffs contend that Lisa Martin was not qualified as a health care provider under the malpractice act at the time of the alleged malpractice or at the time of the filing of plaintiffs' lawsuit. In our previous opinion, we determined that Ms. Martin is a health care provider under the malpractice act because she was the employee of a corporation and was acting in the course and scope of her employment, relying on La. R.S. 40:1299.41(A)(1). Remet v. Martin, supra, 705 So.2d at 1136. However, absent proof indicating that Ms. Martin was "qualified" pursuant to La. R.S. 40:1299.42(A), this Court held that the medical malpractice statute does not automatically grant "qualified" health care status to all employees of qualified health care providers. The judgment in favor of Ms. Martin was therefore reversed and the case was remanded for further proceedings on this basis.
There is no dispute that Ms. Martin is a health care provider as defined in La. R.S. 40:1299.41(A)(1), as she has been found to be an employee acting in the scope of her employment, and the hospital is a "corporation whose business is conducted principally by health care providers." La. R.S. 40:1299.41(A)(1). However, the parties dispute whether Ms. Martin is "qualified" within the meaning of the malpractice act.
La. R.S. 40:1299.42(A) addresses the qualifications a health care provider must possess to be qualified under the act. To qualify, a health care provider must file proof of financial responsibility and pay the annual Patient's Compensation Fund surcharge levied on the health care provider according to La. R.S. 40:1299.44.
On remand, Ms. Martin obtained a Certificate of Enrollment from the Fund indicating that she was qualified under the act at the time the alleged malpractice occurred. The certificate indicated that River Oaks was certified as an enrollee, and had submitted proof of financial responsibility and had paid the applicable surcharges. The Fund issued this certificate based on this Court's holding that Ms. Martin was an employee of River Oaks, a qualified health care provider, at the time the alleged malpractice occurred.
*129 Plaintiffs argue on appeal that the Act does not contemplate retroactive enrollment, and that employees of qualified health care providers are not automatically qualified under the Act, citing Jones v. Crow, 633 So.2d 247, 250 (La.App. 1st Cir. 1993). However, we find the case cited by plaintiffs to be distinguishable from the present situation. In Jones, a nurse who was employed by a qualified health care provider claimed protection under the Act based on her employment status, but she was informed by the Patient's Compensation Fund that she was not a member of the Fund on the date the alleged malpractice occurred. In the present case, unlike Jones, the administrators of the Fund issued a Certificate of Enrollment indicating that Ms. Martin, the employee in this case, was a qualified health care provider at the time of the alleged malpractice. Thus, the decision in Jones is not applicable in this case.
Plaintiffs point to the fact that Ms. Martin had no proof of this enrollment at the time the lawsuit was filed, and in fact originally denied that she was an employee of River Oaks. However, this Court made the legal determination that Ms. Martin was an employee of the hospital, and the Fund issued a Certificate of Enrollment on this basis. The Fund obviously made a determination that Ms. Martin, as a social worker employed by River Oaks, was qualified under the Act based on the qualification of the employer. The record indicates that River Oaks submitted proof of financial responsibility and paid the applicable surcharge for qualification of its hospital and its employees. As stated in our previous opinion, there is no requirement for the payment of additional surcharges for the employees of a qualified health care provider who are also qualified health care providers themselves. Remet v. Martin, 705 So.2d at 1136, citing La. R.S. 40:1299.45(A)(2).
We conclude that the Certificate of Enrollment contained in the record which names Lisa Martin is clear evidence that Ms. Martin is a qualified health care provider. See, Guidry v. Federline, 537 So.2d 838 (La.App. 5 Cir.1989).
In reaching this conclusion, we reject plaintiffs' argument that the Fund should be estopped from changing its initial determination of Ms. Martin's status under the Act.[2] Plaintiffs made a similar argument in their appeal of the first summary judgment. In our previous opinion, we rejected plaintiffs' argument that Ms. Martin had waived her qualified health care provider status because it was not asserted earlier in the proceedings. The fact that Ms. Martin raised this status in the motion for summary judgment was sufficient to preserve the issue for review. Remet v. Martin, supra, 705 So.2d at 1136.
In addition, the evidence in the record before us indicates that once the Fund was informed of this Court's decision on Ms. Martin's status as an employee of River Oaks, the Fund issued a Certificate of Enrollment naming Ms. Martin as a qualified health care provider. Although plaintiffs assert that their trial strategy has been affected by the Fund's actions, the record shows that a dispute over Ms. Martin's employment status began soon after plaintiffs' petition was filed. Accordingly, we find no basis for a finding that the Fund is estopped from finding Ms. Martin to be qualified under the Act.
Under the circumstances presented here, we conclude that Lisa Martin is a qualified health care provider entitled to the protections of the Louisiana Medical Malpractice Act. We now turn to the more difficult issue raised in plaintiffs' appeal regarding the dismissal of Ms. Martin and her insurer on the basis of plaintiffs' settlement with Dr. Daul.

*130 Dismissal of Multiple Health Care Providers

In their final assignment of error, plaintiffs contend that the trial court erred in dismissing Ms. Martin and her insurer from the litigation based on plaintiffs' settlement with Dr. Daul. Plaintiffs contend that settlement by one qualified health care provider does not entitle all other health care providers to dismissal from the suit. We agree.
In this malpractice action, plaintiffs named as defendants Dr. Daul and his insurer, River Oaks (who was self-insured), Lisa Martin and her insurer. Following the settlement with Dr. Daul for his maximum liability, River Oaks brought a motion for summary judgment on the basis that settlement with one health care provider entitled the other providers to dismissal from the suit. Plaintiffs did not oppose this motion, and River Oaks obtained a judgment of dismissal. No appeal was taken from this judgment.
Lisa Martin also filed a motion for summary judgment at this point in the proceedings, and the plaintiffs opposed this motion on the basis of Ms. Martin's status as a qualified health care provider. The trial court granted the summary judgment and plaintiffs appealed. This Court reversed, but did not reach the issue of whether settlement with one health care provider entitled the other providers to a judgment of dismissal. Based on our determination that Lisa Martin is a qualified health care provider, we must now address the issue of whether the plaintiffs' settlement with Dr. Daul and the resulting statutory admission of liability entitles the other health care providers to be dismissed from the suit.
La. R.S. 40:1299.44(C)(5) provides, in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
Because the Medical Malpractice Act constitutes a special legislative provision in derogation of the general rights available to tort victims it must be strictly construed. Galloway v. Baton Rouge General Hosp., 602 So.2d 1003, 1005 (La. 1992).
Defendants rely on the case of Stuka v. Fleming, 561 So.2d 1371 (La.1990) to support their claim that the dismissal of Ms. Martin was proper under the circumstances. In Stuka, the plaintiff settled for $100,000.00 with one of three qualified providers and thereafter released and voluntarily dismissed the others. The Fund asserted claims against the two non-settling providers, arguing that the three defendants' liability totaled $300,000.00, while only $100,000.00 had been paid in settlement. The Supreme Court held that based on plaintiff's settlement with one health care provider, the Fund was precluding from litigating the liability of the health care providers who were voluntarily dismissed by plaintiff. The Court stated as follows:
[U]nder the express terms of Section 1299.44C, the malpractice victim's settlement with one health care provider or his insurer for $100,000 not only triggers the Fund's liability for excess damages, if any, but also precludes the Fund from contesting that health care provider's liability. The issue in this case is whether the result is different when other health care providers have been joined in the suit and are dismissed along with the release of the health care provider who paid $100,000.
The statute does not make any express provisions for a case in which multiple health care providers have been joined as defendants and only one pays $100,000 in settlement. We interpret the overall statute as dispensing with *131 the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in settlement.
561 So.2d at 1373-74. (Emphasis in original.)
The Court further stated as follows:
The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages. * * * Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.
Id., 561 So.2d at 1374.
The holding in Stuka is that the Fund is precluded from litigating the issue of the liability of a non-contributing health care provider once there has been a settlement by another provider for $100,000.00. The Supreme Court did not address the issue of whether liability of a non-settling provider can be litigated by the plaintiff where the provider was not voluntarily dismissed from the lawsuit. Thus, this case presents the unique issue of whether the plaintiff is precluded from litigating the liability of additional health care providers once a settlement has been reached with the first health care provider. We fail to find the holding of Stuka to be controlling in this case, and we conclude that the malpractice act does not provide for the dismissal of other health care providers on the basis of plaintiffs' settlement with the first health care provider for its maximum liability.
In the present case, liability of Dr. Daul was admitted upon his settlement with plaintiffs for $100,000.00. However, there was no such admission of liability on the part of Ms. Martin, and plaintiffs have failed to voluntarily dismiss Ms. Martin from this lawsuit. Under these circumstances, nothing in the malpractice statute or in the holding of Stuka can be construed as preventing plaintiffs from seeking a determination of liability on the part of Ms. Martin.
Under the malpractice act, liability of multiple health care providers, to an aggregate exceeding $100,000.00, does not inure to the victim, but reduces the excess due from the Fund. La. R.S. 40:1299.42(B)(3)(a). Further, the Act provides that the total amount paid from multiple health care providers cannot exceed $500,000.00, whether payable by the providers and their insurers, or by the Fund. La. R.S. 40:1299.42 B(1) and (3)(b); Butler v. Flint Goodrich Hosp. of Dillard University, 607 So.2d 517 (La.1992). In addition, Louisiana jurisprudence provides that where the injury is indivisible such as the one here, a single limitation applies, regardless of the number of health care providers involved. Turner v. Massiah, 94-2548 (La.6/16/95), 656 So.2d 636, 639. *132 Thus, under the applicable law, because Ms. Martin is a qualified health care provider, a determination of liability will not affect the Fund's liability.
Our conclusion in this case is not inconsistent with the Supreme Court's holding in Stuka. We note that Stuka addressed the rights of the Fund to seek contribution from other health care providers following a settlement and admission of liability, and not with the plaintiffs' claims against multiple health care providers. Further, the Court specifically stated in Stuka that a settlement by one health care provider for $100,000 dispenses with the litigation of liability between the victim and the Fund. Therefore, nothing in the malpractice act or in Stuka states that once the victim settles with one health care provider, the victim is precluded from seeking a determination of liability against remaining health care providers.

Conclusion
Accordingly, we hold that the trial court erred in dismissing Lisa Martin and her insurer from plaintiffs' lawsuit. We therefore reverse the summary judgment in favor of defendants and remand this case for further proceedings consistent with this opinion. Each party is to bear its own costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] La. C.C.P. article 2083(A) provides that "[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814."
[2] The record indicates that the director of the Fund initially concluded that Ms. Martin was not a qualified health care provider.