804 So.2d 895 (2001)
Archie PERRY
v.
CITY OF BOGALUSA, et al.
No. 2000 CA 2281.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
*896 Archie Perry, Bogalusa, LA, plaintiff-appellant, in proper person.
Bradley C. Myers, John F. Jakuback, Lana D. Crump, Melissa A. Hemmans, Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, L.L.P., Baton Rouge, LA, for defendants-appellees City of Bogalusa, et al.
BEFORE: CARTER, C.J., PARRO, and CLAIBORNE[1], JJ.
PARRO, J.
Archie Perry appeals a judgment that granted a motion for summary judgment in favor of the City of Bogalusa and its police chief, Jerry Agnew, and dismissed his property damage and mental anguish claims against them. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On February 4, 1998, suspecting a drug transaction had just taken place, a police officer in Bogalusa tried to pull over a vehicle driven by Arthur R. Mingo, Jr. Mingo stopped briefly, but when the officer got out of the police car, Mingo accelerated and tried to get away. With the officer in pursuit, Mingo was exceeding the speed limit and running stop signs for seven city blocks until he came to a "T" *897 intersection at Second Avenue and East 9th Street. Archie Perry is the owner and occupant of a house that sits just off that intersection at 630 East 9th Street. As Mingo braked and tried to make a left turn, he lost control of the vehicle. It crashed into the front of Perry's house, causing damage to the chain link fence, gate, front sidewalk, front steps, and front wall of the house. Perry was in the house at the time of the accident, but was not physically injured.
Perry, an attorney, filed suit against Mingo; Grace Foster, Mingo's grandmother, who owned the car he was driving; Allstate Insurance Company (Allstate), Foster's insurer; the City of Bogalusa (the City); Police Chief Jerry Agnew; and Bogalusa city police officers "A," "B," "C," and "D." Perry sought damages for the property damage to his house and the "extreme mental anguish" he allegedly suffered when he heard and felt the impact and witnessed the police conduct following it. Perry alleged the accident was caused by a high speed automobile chase initiated by Officer "A" and participated in by the other officers, all of whom he claimed were negligent in taking this action. He asserted the City was negligent in hiring Agnew, who was negligent in failing to provide adequate training and standards for his officers. Perry also alleged Mingo's negligence in causing the accident and Foster's negligence in allowing her grandson to drive her car without proper instructions.
The City and Agnew filed answers and later filed a motion for summary judgment, supported by the petition, their answer, Mingo's deposition, and the deposition of Sergeant Charles Helton. Perry responded by filing an opposition supported by his own affidavit, along with various attachments, and asking for summary judgment in his favor. After a hearing, the trial court stated that it appeared the damage to Perry's property was caused by the negligence of Mingo, and found no negligence on behalf of the City or Agnew. The trial court granted the defendants' motion and dismissed Perry's claims against the City and Agnew. This appeal followed.

FINAL JUDGMENT
Of the five named defendants in the suit, the judgment appealed from dismissed Perry's claims only as to the City and Agnew, leaving the claims against Mingo, Foster, and Allstate unresolved. Therefore, when the appeal was lodged, this court issued a rule to show cause why the appeal should not be dismissed, on the grounds that the summary judgment in favor of the City and Agnew appeared to be a partial non-appealable judgment, rather than a partial final judgment, in accordance with Louisiana Code of Civil Procedure article 1915(B).[2] The trial court allowed the City and Agnew to supplement the record with a certified copy of a dismissal showing Foster, Mingo, and Allstate had settled with Perry and had been dismissed from the suit. With this supplementation of the record, it is clear that all of the named defendants have been dismissed.
However, Perry also sued four unnamed police officers, but never amended *898 his petition to name them and did not serve them.[3] In his comments at trial, as well as in his brief and oral argument to this court, Perry indicated his intention to pursue his claims against these remaining defendants. While it appears these claims are prescribed, this court cannot supply the objection of prescription, which must be specially pleaded. LSA-C.C.P. art. 927(B). Accordingly, we must address the jurisdictional issue of whether, when unnamed and unserved defendants remain in the lawsuit after all the named defendants have been dismissed, the judgment dismissing the last of those named defendants is a final judgment under the applicable version of Louisiana Code of Civil Procedure article 1915(B).
The Louisiana Supreme Court has addressed the issue of finality of judgments under the applicable version of Article 1915 in two cases involving summary judgments rendered pursuant to Louisiana Code of Civil Procedure article 966(E). Article 966(E) states that a summary judgment may be rendered "dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." In Alpaugh v. Continental Ins. Co., 01-0101 (La.6/29/01), 791 So.2d 71, 74 n. 2, the court noted that the partial judgment on the issue of insurance coverage was immediately appealable as a partial final judgment under Article 1915(A)(3), because summary judgment on the coverage issue was rendered pursuant to Article 966(E). That case, having been rendered under the provisions of Article 966(E), did not involve the dismissal of some, but not all, of the parties.
Similarly, in Shell Pipeline Corp. v. Kennedy, 00-3207 (La.10/16/01), 799 So.2d 475, the court addressed a partial summary judgment in favor of the taxpayer on the definition of a statutory term. Like in Alpaugh, the judgment was rendered pursuant to Article 966(E) and was dispositive of a particular issue; it did not involve the dismissal of some, but not all, of the parties. The appellate court had dismissed the appeal for failure to designate the judgment as final in compliance with Article 1915(B). The supreme court reinstated the appeal, noting the internal conflict within Article 1915 prior to its amendment. Under the pre-amendment version of Article 1915(B), when a partial summary judgment was rendered as to one or more, but less than all of the claims, demands, issues, theories, or parties, it had to be designated as a final judgment before it could be appealed. Yet Article 1915(A)(3) stated that a final judgment could be rendered when granted pursuant to Article 966(E), which specifically allowed a summary judgment dispositive of a particular issue, even though the entire case was not disposed of. Noting that appeals are favored and should not be dismissed unless the ground urged for dismissal is free from doubt, and finding that the language of Article 1915(B) produced doubt concerning the availability of appeal in cases under Article 1915(A)(3) involving summary judgment pursuant to Article 966(E), the court ruled that the appeal should not have been dismissed. Shell Pipeline Corp., 799 So.2d at 478.
However, those cases address only the situation under Article 966(E), in which a particular issue is disposed of by partial summary judgment. Article 966(E) does not involve the dismissal of some, but not all, of the parties. Therefore, these cases do not resolve the issue before us, in *899 which all of the named defendants have been dismissed, but there remain unnamed defendants against whom the plaintiff intends to pursue his claims. Apparently this question has arisen and been addressed only in the context of a medical malpractice case, in which all the named defendants had been dismissed, leaving only the issue of excess damages to be tried against the Louisiana Patients' Compensation Fund, which was not a named defendant in the litigation. Remet v. Martin, 98-2751 (La.App.4th Cir. 3/31/99), 737 So.2d 124, 126. There the court determined that the judgment, which dismissed all the named defendants, was a final, appealable judgment. Remet, 737 So.2d at 128. The case before us does not have the unique characteristics applicable to medical malpractice suits, but we believe the same principle is applicable to Perry's appeal. The judgment dismissing the City and Agnew disposed of all the claims against the remaining named defendants, leaving no named defendants in the lawsuit. Under Louisiana Code of Civil Procedure article 891, a petition must set forth the name, surname, and domicile of the parties. Anyone who is not named is simply not a party until named. Moreover, we do not believe a plaintiff can prevent a judgment from becoming final by the simple expedient of designating unnamed defendants and failing to name and serve them before entry of a judgment dismissing the remaining named defendants. Accordingly, the judgment appealed from is a final, appealable judgment.

SUMMARY JUDGMENT
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Lee v. Grimmer, 99-2196 (La. App. 1st Cir. 12/22/00), 775 So.2d 1223, 1225. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. art. 966(C)(2); Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038 (La. App. 1st Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.
Perry's claim against the City is that it was negligent in hiring Agnew; he alleges Agnew was negligent in training and supervising the city police officers.[4] *900 Under the facts of this case, before any liability could be imposed on the City or Agnew, Perry would have to show that the police officers were negligent in their handling of the pursuit of Mingo, such that their actions caused Mingo's loss of control of the vehicle. Lacking such evidence, even if there were negligence on the part of the City or Agnew, it could not be causally linked to Perry's damages.
In support of their motion, the City and Agnew submitted Mingo's deposition. Mingo said he left a store driving his grandmother's car, picked up a passenger whom he did not know, and drove a few blocks on East 2nd Street to Second Avenue. He turned right and drove down Second Avenue. When he stopped at a stop sign at the intersection with East 3rd Street, Mingo saw a car with a flashing police light behind him. He did not hear a siren. Mingo said he realized he did not have a driver's license, panicked, and "mashed the gas" to get away from the police. He did not stop for the stop signs at East 4th Street, East 6th Street, or the "T" intersection at East 9th Street, and admitted he knew this created a dangerous situation. Mingo insisted he could not estimate how fast he was traveling as he drove down Second Avenue and tried to make a left turn onto East 9th Street. He said when he braked to make the left turn, a tire blew out and caused him to hit the house at 630 East 9th Street. Mingo explained, "When I hit the corner [the] tire blew out. Boom. Next thing I know I hit the man's house." Although Mingo was adamant that he was not going too fast to make the turn, he acknowledged that his car left skid marks before reaching the corner where the tire blew. He admitted, "The way I was driving I could have caused a[n] accident or something like that." When the car hit the house and stopped, Mingo's passenger ran from the car. After Mingo got out of the car, the police officer pulled his gun, forced him to the ground, handcuffed him, and put him in the back seat of the police car. By that time, other police units had arrived. The police found marijuana on the passenger side of the front seat of the car, but Mingo was unable to give them the name of his passenger. Pursuant to a plea bargain, Mingo eventually pled guilty to simple possession of marijuana, running a stop sign, and driving without a license.
The deposition of Sergeant Charles Helton was also introduced in support of the motion for summary judgment. Helton said he had been with the Bogalusa Police Department for almost ten years, had attended the LSU basic training academy, and had taken several interview and interrogation courses. On the day of the incident with Mingo, Helton was informed by a superior officer that several undercover agents had witnessed a drug transaction in the vicinity. The car involved matched the description of the car being driven by Mingo, so when Helton saw Mingo turn onto Second Avenue, he pulled up behind him and turned on his lights and siren. Helton said Mingo pulled to the right and began to stop, and Helton opened his door to get out. At that point, Mingo "took off, sped off."
Helton testified that he called for additional units and fell in behind Mingo. Mingo was driving down the center of the road, was exceeding the speed limit, and did not slow down at the stop signs along Second Avenue. Helton estimated Mingo's *901 speed at 50 to 60 miles per hour. Helton was slowing for the stop signs and had to slow down considerably at East 6th Street to avoid an eighteen-wheeler coming down that street. Helton said he had just reached the intersection of East 7th Street when Mingo hit his brakes and slid into Perry's house at East 9th Street. Skid marks on the road showed Mingo's left tires had been left of the center line. When Mingo's car stopped, a black male got out of the passenger side, jumped over the fence, and ran through Perry's yard. Mingo got out and walked toward Helton's car; Helton pulled his weapon and told him to get down on the road. Another officer arrived, handcuffed Mingo, and put him in a police car.
Helton further stated that a search of the car Mingo had been driving revealed marijuana on the front seat, mostly on the passenger side. When questioned, Mingo said he was trying to get away because he did not have a driver's license; Mingo also denied any knowledge of the marijuana and said he did not know the identity of his passenger. Mingo was eventually charged with flight from an officer, aggravated flight from an officer, running three stop signs, simple possession of marijuana, and operating a vehicle without a license.
Based on these depositions, we are satisfied that the City and Agnew established that there was an absence of factual support for Perry's claims that the police officer pursuing Mingo was negligent or reckless and that it was this pursuit that caused Mingo to lose control of the car and hit Perry's house.[5] At this point, the burden shifted to Perry to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden at trial.
Perry supported his opposition to the motion with his own "affidavit," and several attachments. However, this evidence is deficient in more respects than we care to describe. By way of illustration, we point out that on his affidavit, Perry notarized his own signature; the affidavit included considerable hearsay concerning conversations that supposedly took place between Mingo and a tow truck operator and between Mingo and his attorney the day following the incident; the affidavit also contained a description of the pursuit, which Perry did not witness and concerning which he had no personal knowledge; attachments to the affidavit included drawings prepared and notarized by Perry, damage estimates prepared by Perry, and newspaper articles concerning alleged police misconduct involving officers other than Helton or any of the named defendants, also notarized as "true copies" by Perry; and finally, the affidavit contained wholly irrelevant allegations that Helton and the other officers "planted" the marijuana in Mingo's car.
Even if any of this were admissible, nothing in the affidavit or attachments establishes that Perry would be able to satisfy his evidentiary burden at trial that Helton was negligent or that his actions caused Mingo's car to hit the house. Failing that, there is no genuine issue of material fact, and the City's and Agnew's administrative or supervisory negligence, if any, is irrelevant. The trial court was correct in granting the motion for summary judgment and dismissing Perry's claims against the City and Agnew.[6]

*902 CONCLUSION
The judgment is affirmed and all costs of this appeal are assessed against Perry.
AFFIRMED.
CARTER, C.J., concurs in the results.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Prior to its amendment by 1999 La.Acts, No. 1263, § 1, effective January 1, 2000, which is applicable to all actions filed on or after that date, Article 1915(B) provided that the granting of a partial judgment as to fewer than all the parties did not constitute a final judgment unless designated as such. See Hook v. Georgia-Gulf Corp., 99-2791 (La.App. 1st Cir. 1/12/01), 788 So.2d 47, 52 n. 6, writ denied, 01-1098 (La.6/1/01), 793 So.2d 200. Because this case was filed before the effective date of the amendment, the prior version of Article 1915(B) is applicable.
[3] Compare Louisiana Code of Civil Procedure article 1201(C), which requires service of citation on all named defendants within ninety days of commencement of the action.
[4] In two of his assignments of error, Perry states that in pleadings or documents the City and Agnew filed in connection with their motion for summary judgment, they admitted their negligence, and the trial court erred in ignoring that admission. We have examined the documents thoroughly and, like the trial court, can find no such admission of negligence. We note also that even if negligence on the part of the City and Agnew had been admitted, this alone would not satisfy all the elements needed to establish Perry's claims against them.
[5] Perry assigned as error the trial court's reliance on Helton's statements, which he claims were contradicted by Mingo in his deposition. We do not find these deposition statements to be contradictory on the relevant facts.
[6] Perry also assigned as error the fact that the trial court ignored his cross motion for summary judgment. At arguments before this court, he said his motion was oral. Since such a motion must be served on the opposing party at least ten days before the scheduled hearing, any oral motion would be improper. See LSA-C.C.P. art. 966(B). However, we note that in his written opposition to the defendants' motion for summary judgment, Perry asked for summary judgment in his favor; this pleading was mailed to opposing counsel. Assuming this sufficed to put the issue before the court, given the trial courts ruling on the defendants' motion, Perry's request for summary judgment in his favor was moot and there was no need for the trial court to address it.