817 So.2d 473 (2002)
Wyleah KING
v.
DOCTOR'S HOSPITAL OF OPELOUSAS.
No. 01-1534.
Court of Appeal of Louisiana, Third Circuit.
May 8, 2002.
*474 Henry A. Bernard, Jr., Oats & Hudson, Lafayette, LA, for Intervenor/Appellee Louisiana Patient's Compensation Fund.
Jarvis J. Claiborne, Opelousas, LA, for Plaintiff/Appellant Wyleah King.
Jacques E. deMoss, Durio, McGoffin & Stagg, Lafayette, LA, for Defendant/Appellee Doctor's Hospital of Opelousas.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
PETERS, J.
This appeal arises out of a judgment declaring null a previously rendered amended judgment signed in connection with a settlement in a medical malpractice case. For the following reasons, we reverse.

DISCUSSION OF THE RECORD
On August 18, 1999, Wyleah King filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund Oversight Board, asserting a claim against Doctor's Hospital of Opelousas (Doctor's Hospital). Subsequently, Doctor's Hospital agreed to settle with Ms. King for the statutory limit of $100,000.00. In the proposed settlement agreement, Ms. King reserved her right to seek additional damages from the Louisiana Patient's Compensation Fund (PCF).
On July 6, 2000, Ms. King filed a petition seeking approval of the settlement and demanding additional damages from the PCF pursuant to La.R.S. 40:1299.44(C)(1). The PCF intervened and filed written objections to the proposed settlement, asserting that Doctor's Hospital did not commit medical malpractice and that, in the alternative, if it did commit malpractice, the resulting damages did not exceed $100,000.00.
The trial court held a hearing on Ms. King's motion on July 28, 2000. The court minutes of that day reflect that Ms. King, Doctor's Hospital, and the PCF were all represented by counsel at the hearing, that a stipulation was entered into by all of the parties, and that a judgment was to be *475 submitted.[1] The judgment that the trial court ultimately signed on September 6, 2000, contained the following pertinent language:
IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the above referenced settlement agreement, as evidenced by Plaintiff's Petition Seeking Approval of Settlement and Demand for Payment of Additional Damages from the Patient's Compensation Fund, between Plaintiff, WYLEAH KING, and defendant, DOCTOR'S HOSPITAL OF OPELOUSAS be and the same is hereby accepted and approved, and that the above numbered and captioned action be and the same is hereby dismissed with full prejudice.
On March 29, 2001, Ms. King filed a motion to amend the September 6 judgment, asserting that it failed to reserve her rights against Doctor's Hospital as a nominal defendant and the PCF. In response to this filing and without holding a hearing, on March 29, 2001, the trial court signed an amending judgment which contained the following language:
IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the above referenced settlement agreement, as evidenced by Plaintiff's Petition Seeking Approval of Settlement and Demand for Payment of Additional Damages from the Patient's Compensation Fund, between Plaintiff, WYLEAH KING, and defendant, DOCTOR'S HOSPITAL OF OPELOUSAS be and the same is hereby accepted and approved, and that the above numbered and captioned action be and the same is hereby dismissed with full prejudice, reserving all rights against DOCTOR'S HOSPITAL of OPELOUSAS, as a nominal defendant (in name only) and the Louisiana Patient's Compensation Fund.
On April 12, 2001, the PCF filed a petition to have the amended judgment declared a nullity as well as a peremptory exception of res judicata. After a June 8, 2001 hearing, the trial court issued written reasons for judgment. On August 6, 2001, the trial court signed a judgment setting aside the March 29, 2001 judgment as an absolute nullity. Ms. King has appealed this judgment.

OPINION
Louisiana Code of Civil Procedure Article 1951(1) provides that "[a] final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party ... [t]o alter the phraselogy [sic] of the judgment, but not the substance...." In its written reasons for judgment, the trial court concluded that "the amended judgment materially changes the substance, and not simply the phraseology of the original judgment." Thus, the trial court set aside the amended judgment as an absolute nullity. In her two assignments of error, Ms. King asserts only one complaint that the trial court erred in declaring the amended judgment an absolute nullity.
The PCF cites us to LaBove v. Theriot, 597 So.2d 1007 (La.1992), in support of the grant of the exception of res judicata. In LaBove, the plaintiffs in an automobile accident case submitted to the trial court a judgment dismissing the case as to all defendants, which judgment the trial court signed. Subsequently, the plaintiffs submitted, ex parte, another judgment that purported to amend the first judgment in order to reserve their rights to proceed against one of the defendants previously *476 dismissed through alleged inadvertence. The trial court signed the judgment, and the defendant filed an exception of res judicata. The trial court sustained the exception. The supreme court explained that there was "no question that the amendment of the original judgment, which purported to reinstate a suit previously dismissed with prejudice, was one of substance, and therefore not permissible under La.Code Civ.Pro., art. 1951." Id. at 1010. Instead, the supreme court explained that "when an error of substance has crept into a final judgment, that error may be corrected by way of a timely motion for a new trial or by appeal" or "by consent of the parties." Id. Because the plaintiffs failed to move for a new trial, appeal the first judgment, or support with competent evidence their claim of consent, the supreme court agreed that the amended judgment was without legal effect and that the first judgment remained valid. Further, the supreme court noted that, under the circumstance of that case, the exception of res judicata was a proper procedure for the defendant to use.
In the instant case, Ms. King failed to timely file a motion for new trial, appeal the original judgment, or prove consent. However, we do not find LaBove dispositive. LaBove involved an attempt to revive a suit against a defendant previously dismissed through inadvertence. In the instant case, neither the settlement agreement nor the original judgment expressly dismissed the PCF from responsibility for damages in excess of the settlement amount. Rather, the original judgment simply did not contain an express reservation of rights against the PCF. Thus, the amended judgment did not purport to revive a previously dismissed claim against the PCF.
Further, we note that the judgment in the instant case provides that "the above referenced settlement agreement ... is hereby accepted and approved." That settlement agreement contained a clear reservation of rights against the PCF. Without regurgitating the specifics of the settlement agreement, its details were incorporated by reference into the judgment through the court's acceptance and approval of it. Thus, the amended judgment in this case did not effect a substantive change but merely used different and more specific words (phraseology) to specify the reservation of rights against the PCF already incorporated into the original judgment via the approval and acceptance of the settlement agreement. Thus, in this case, pursuant to La.Code Civ.P. art. 1951, the trial court had authority to amend the original judgment to the extent of specifying the reservation of rights against the PCF.
Additionally, LaBove involved a suit arising out of an automobile accident, whereas the instant suit is one arising out of medical malpractice and involving the PCF. "[T]he position of the Fund is sui generis; it is a creature of statute and has only those rights expressly given to it by the legislature." Remet v. Martin, 98-2751, p. 5 (La.App. 4 Cir. 3/31/99), 737 So.2d 124, 127. In fact, "[t]he Louisiana Medical Malpractice Act contemplates only one party defendant, the health care provider." Koslowski v. Sanchez, 576 So.2d 470, 473 (La.1991), overruled in part on other grounds, Russo v. Vasquez, 94-2407 (La.1/17/95), 648 So.2d 879. "The fund is not a negligent party and does not have the status of an Article 2315 defendant." Williams v. Kushner, 549 So.2d 294, 296 (La.1989). The Medical Malpractice Act "does not give the Fund status as a coobligor or insurer of the health care provider.... The Fund does not have to be made a party to the litigation, nor cast in judgment in order to disburse its funds. *477 The only requirement is a final judgment or a court approved settlement, or a final arbitration award, against the health care provider in excess of one hundred thousand dollars." Remet, 737 So.2d at 127-28 (quoting Kelty v. Brumfield, 534 So.2d 1331, 1333-34 (La.App. 4 Cir.1988), writs denied, 536 So.2d 1221, 1222 (La.1989)).
Specifically, La.R.S. 40:1299.42(B)(3)(a) provides: "Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers ... shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C)." Pursuant to La.R.S. 40:1299.42(D)(5), a partial settlement "shall not bar the continuation of the action against the patient's compensation fund for excess sums." Importantly, La.R.S. 40:1299.44(C) provides the procedure to be followed where "the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release":
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the *478 patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient's compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. A self-insured health care provider shall, for the benefit of the patient's compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof.
(8) The parties may agree that any amounts due from the patient's compensation fund pursuant to R.S. 40:1299.44(B) be paid by annuity contract purchased by the patient's compensation fund for and on behalf of the claimant.
(9) Notwithstanding any other provision of this Part, any self-insured health care provider who has agreed to settle its liability on a claim, and has been released by the claimant for such claim or any other claim arising from the same cause of action, shall be removed as a party to the petition, and his name shall be removed from any judgment that is rendered in the proceeding. Such release shall be filed with the clerk of court in the parish in which the petition is filed upon the filing of a properly executed, sworn release and settlement of claim.[[2]]
Nothing in La.R.S. 40:1299.44(C) requires an explicit reservation of rights against the PCF in the judgment approving the settlement agreement between the plaintiff and health care provider/insurer. It would be superfluous to require such a reservation where the plaintiff complies with the procedures in La.R.S. 40:1299.44(C) and files a petition seeking approval of the settlement and demanding additional damages from the PCF. Indeed, even assuming that the PCF enjoyed the status of being a solidary obligor with Doctor's Hospital, which it clearly does not, pursuant to La.Civ.Code art. 1803, "[r]emission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor." This Article effected a change in the law. "Since either a remission of debt or a transaction or compromise in favor of, or made with, a solidary obligor benefits the other obligors only in the amount of the portion of that obligor, it is quite clear that the obligee preserves his right against the other solidary obligors, with deduction of the portion of the one released, without need of any reservation, as the new article does not require that the obligee reserve any rights for that purpose." 1 Saúl Litvinoff, The Law of Obligations § 7.97, at 179-79, in 5 Louisiana Civil Law Treatise (2001). Thus, Ms. King's rights against the PCF were reserved even without the reservation of rights language in either the *479 settlement or judgment. Because Ms. King retained her rights against the PCF without an express reservation of rights, the amended judgment specifying the reservation of rights did not alter the substance of the first judgment.
Accordingly, we find that the amended judgment merely changed the phraseology rather than the substance of the original judgment under the facts of this case regarding the PCF. Thus, the trial court erred in sustaining the exception of res judicata, and we reverse that ruling and reinstate the amended judgment. Our holding is not intended to address the nature and effect of the language in the amended judgment that also purported to reserve rights against Doctor's Hospital as a nominal defendant because that issue is not before us on appeal.

DISPOSITION
For the foregoing reasons, we reverse the judgment that sustained the PCF's exception of res judicata and annulled the March 29, 2001 amended judgment, and we remand for further proceedings. We assess all costs of these proceedings to the PCF.
REVERSED AND REMANDED.
NOTES
[1] The record does not contain a transcript of this hearing.
[2] Subparagraph (9) was added by Acts 2001, No. 725, § 1, effective June 25, 2001, but is not implicated in the specific issue now before us on appeal.