300 So.2d 571 (1974)
Liselotte VON UWA, wife of/and Ray WIRICK and Lauren S. Wirick, Plaintiffs-Appellants,
v.
Muriel B. WYBLE et al., Defendants-Appellees.
No. 4663.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
*572 Garland R. Rolling, Metaire, for plaintiffs-appellants.
Norman P. Foret, of McBride & Brewster, Lafayette, for defendants-appellees.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
FRUGÉ, Judge.
This case arises out of an action for personal injuries on behalf of Lauren S. Wirick. She was struck while riding her bicycle by a delivery truck driven by Muriel B. Wyble, an employee of Rosser's Prescription Shop. Suit was filed against Muriel B. Wyble, R. E. Rosser, and Rosser's insurer, Employers Commercial Union Insurance Company. By amended petition State Farm Mutual Automobile Insurance Company was made a party defendant on grounds that it was the automobile insurer of Muriel B. Wyble on her own personal automobile. The amended petition alleges coverage under the State Farm policy on grounds that the Rosser pickup truck is a non-owned vehicle within the scope of the policy's excess coverage.
A settlement was reached by which Mrs. Wyble, Mr. Rosser, and his insurer, Employers Commercial Union Insurance Company, were released. All rights against State Farm were reserved. Suit was then prosecuted against State Farm. The trial judge rendered a summary judgment for the defendant, State Farm. We reverse.
There is no dispute concerning the facts before this court. The only issues presented are questions of law. Thus, we conclude that the posture of the case is such that the issue of State Farm's liability would admit of adjudication by summary judgment.
The issues presented on appeal are, first, whether the release of the insured, Mrs. Wyble, also effected a release of her insurer, State Farm, and, second, whether the policy excludes coverage on the facts herein presented.
*573 Appellee, State Farm, contends that its obligation as excess insurer was extinguished by the release of its insured, Mrs. Wyble. The contention is that an insurer has no independent liability and that if the insured is not liable, then the insurer is not liable. Appellees rely on Bergeron v. Gifford-Hill & Co., 137 So.2d 63 (La.App. 3rd Cir. 1962), which held that a release of the insured also released the insurer.
However, we note that the Bergeron case was overruled on this point by the Supreme Court in Futch v. Fidelity & Casualty Co., 246 La. 688, 166 So.2d 274 (1964). The holding of the court in Futch was that a release of an insured and his primary insurer did not effect a release of an excess insurer where the clear intent of the compromise was to release the primary insurer in consideration of the sums paid by it. In noting that Article 3073 of the Civil Code limits the effect of a compromise agreement to the differences intended to be settled, the court held that there had been no intent in compromising with the primary insurer to release the excess insurer. The court did note that a total release of the insured would release an insurer. But the court found there to be no intent to release the insured except to the extent of insurance coverage provided by the primary insurer. As in the case now before us, there had been a specific reservation of rights against the excess insurer.
We find Futch to be dispositive of the issue presented here. The compromise which released Rosser, Employers Commercial Union, and Mrs. Wyble was intended to release Mrs. Wyble only to the extent of the primary insurance coverage provided by Employers Commercial Union. The reservation of rights against State Farm shows that there was no intent to release Mrs. Wyble or State Farm beyond this. Article 3073 declares in part:
"The renunciation, which is made therein for all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises."
The differences compromised were those with Rosser and with Employers Commercial Union and did not relate to the differences with State Farm. Therefore, the renunciation by the plaintiffs of their claims and demands extended only to differences between Rosser and Employers Commercial Union, and anything beyond those differences was without legal effect.
Since we find that there was no release of State Farm, we must now determine whether there was coverage of Mrs. Wyble on the facts presented. State Farm argues that there is no coverage because the vehicle Mrs. Wyble was driving is not a "non-owned automobile" within the meaning of the policy. The definitions section of the policy defines a "non-owned automobile" as "an automobile not owned by or furnished for the regular use of ... the named insured...." State Farm contends that the prescription shop pickup truck which Mrs. Wyble was driving was "furnished for [her] regular use...." Appellants contend that it was not furnished for her regular use because Mrs. Wyble was not employed by Rosser as a delivery person and only used the truck sporadically when the regular delivery boy did not show up.
This court had occasion to examine the meaning of the "furnished for the regular use" clause in the case of Brouillette v. Fireman's Fund Insurance Co., 163 So.2d 389 (La.App. 3rd Cir.), writ refused, 246 La. 594, 165 So.2d 485 (1964):
"Reverting to the interpretation of the meaning of the exclusion from medical payments coverage of vehicles `furnished for the regular use' of the named insured, the Supreme Court of Mississippi, consonant with other authority, recently stated with regard to it that: `* * * the obvious purpose of the exclusionary clause is to limit the extention of medical payments coverage to casual or infrequent use or occupancy of automobiles *574 other than the one defined in the policy.' Moore v. State Farm Mut. Auto. Ins. Co., 239 Miss. 130, 121 So.2d 125, 127 (1960).
. . . . . .
However, the exclusion clause does not exclude from medical payments coverage merely vehicles `regularly used' by the named insured; it excludes from such coverage those vehicles `furnished' for his regular use.
The words `furnished for' connote: to provide for; to supply for; to afford for; to provide what is necessary for. See Webster's New International Dictionary, 2nd ed., 1960, verbo `furnish', p. 1021.
The words `regular use' connote: used according to some established rule or principle; a use steady or uniform in course, practice, or occurrence (as contrasted to unexplained or irrational variation); use in conformity with established or prescribed rules. Id., verbo `regular', p. 2099. See also 36A Words and Phrases (1962 volume) verbo `regular', p. 241, verbo `regular use', p. 301." 163 So.2d at 392.
In that case, the court held that a fire truck was furnished for the regular use of a fireman
"in the sense that it was supplied, afforded, or provided specifically for this particular employee's use or occupancy whenever such was required for the purpose for which the vehicle was made available. It was furnished for the plaintiff's `regular' use in the sense that it was always furnished for the plaintiff's use in attending every fire that occurred while he was on duty, which thus was a use steady or uniform in practice, a use in accordance with established or prescribed rule or principle (as contrasted with being furnished for use only on casual or random or unpredictable or chance occasion.)" 163 So.2d at 392.
In Blanchard v. Hanover Insurance Co., 250 So.2d 484 (La.App. 1st Cir. 1971), Blanchard was injured while driving a pickup truck owned by his employer. The "furnished for regular use" clause was drawn into question when he sued his insurer. Blanchard was "subject to call at night" at six to eight week intervals and a vehicle was left at the place of business for use of the employees on call. In holding that the vehicle was furnished for the regular use of the employees despite the infrequency of use, the court noted "the employer continuously, at regular and predictably certain intervals, furnished vehicles for plaintiff's use, .... since the use in this case constantly recurred at fixed intervals, we hold that it is of the type of use intended to be excluded." 250 So.2d at 487.
In Dickerson v. Millers Mutual Fire Insurance Company of Texas, 139 So.2d 785 (La.App. 2nd Cir. 1962), the court held that an ambulance operated occasionally and as necessity required by the plaintiff was furnished for his regular use. And in Rolling v. Miller, 233 So.2d 723 (La.App. 4th Cir. 1970), a vehicle used by a policeman was held to be furnished for his regular use.
We believe that the vehicle used by Mrs. Wyble was not furnished for her regular use. The facts are not in dispute. Mrs. Wyble in her deposition testified that she used the truck only approximately twice a month. There was a regular delivery boy for whom the truck was furnished. Her use of the truck was not regular under the Brouillette test because the use was not "steady or uniform in practice." She did not use the truck at "regular and predictably certain intervals" (Blanchard, 250 So.2d at 487). Rather, her use was at irregular intervals only when the regular delivery boy did not show up for work. We conclude that her use of the pickup was "casual or infrequent" and thus within the definition of a non-owned vehicle under the policy.
*575 State Farm lastly argues that exclusion (h) (2) of the policy applies to the facts presented here. That exclusion provides that the policy does not apply to:
"(h) .... a non-owned automobile.... while used by any person while such person is employed or otherwise engaged in ....
(2) any other business or occupation of the insured, but this exclusion (h) (2) does not apply to a private passenger automobile operated or occupied by the named insured...."
State Farm contends that a pickup truck is not a "private passenger automobile" as defined by the policy, and that this exclusion applies since Mrs. Wyble was engaged in her occupation at the time of the accident. A "private passenger automobile" is defined in the policy as a "four wheel private passenger, station wagon, or jeep type automobile."
In Riker v. Aetna Casualty & Surety Co., 286 So.2d 493 (La.App. 1st Cir. 1973), the court was presented with the identical issue presented here. The court there stated:
"Certainly, pickup trucks are used as private passenger automobiles by a growing number of people. Most citizens would be surprised to learn that their insurance policies intend a distinction between their use of a neighbor's car and his pickup. For this reason, we feel that if pickup trucks are to be excluded from the description of private passenger automobiles, this exclusion should be specific and easily understood by the general public." 286 So.2d at 495.
We agree that in this day and time a pickup truck with a load capacity of less than 1,500 pounds is a private passenger automobile.
Therefore, we conclude that there is coverage under the State Farm policy.
For the reasons assigned, the judgment of the trial court is reversed and the case is remanded to the District Court for proceedings in accordance with law and consistent with the views herein expressed.
Costs of this appeal are assessed to appellee. All other costs will await final disposition of the case.
Reversed and remanded.