**In re COMBUSTION, INC.**

**Civil Action No. 94 MDL 4000.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Jan. 10, 1997.

---

## MEMORANDUM AND ORDER

HAIK, District Judge.

Before the Court are four motions to Dismiss the Plaintiffs' Direct Action Claims: Motion by Avondale's Insurers for Partial Summary Judgment declaring their maximum Liability to the Plaintiffs to be $24 Million Dollars and Dismissing Plaintiffs' Direct Action Claims; Joint Motion for Summary Judgment filed on Behalf of Bellefonte Underwriters Insurance Company and Compass Insurance Company as alleged Insurers of Williams–McWilliams Regarding Louisiana's Direct Action Statute, Motion for Summary Judgment by First Horizon Insurance Company on the Application of the Direct Action Statute, and Motion for Summary Judgment by Carrier as alleged Insurer of Williams–McWilliams Company, Inc. Regarding Louisiana's Direct Action Statute. The Plaintiffs' Class opposes each Motion.

After careful study of the briefs, hours of oral argument on the 3rd and 18th of October, 1996, review of the parties' supplemental briefs, and for the reasons that follow, this Court hereby DENIES each Motion.

### Motion by Avondale's Insurers

Plaintiffs sued Avondale and a host of other Defendants in 1986 for injuries and property damage allegedly arising out of their exposure to toxic substances at the Combustion site. This Court allowed the Plaintiffs to sue the Defendants' insurers in June 1995 pursuant to Louisiana's Direct Action Statute, La.R.S. 22:655. In July 1995, the Plaintiffs entered into a settlement agreement with Avondale. As part of this settlement agreement between Avondale and the Plaintiffs, Avondale "stipulate[d] to entry of judgment ('the judgment') granting judgment in favor of the Plaintiff Class and against Avondale Industries, Inc. in the sum of $24.000,000 ..." *Subscription to Combustion Litigation Preliminary Settlement Agreement Settling Forth Specific Terms of the Settlement Between Avondale and the Plaintiff Class.* In addition to an elaborate payment and credit algorithm, Avondale "asign[ed] ... to the Plaintiff Class all of Avondale's rights, titles and interests in the proceeds of any and all primary, excess and umbrella insurance policies that may provide coverage to Avondale for the tort claims asserted in the Combustion Litigation." *Id.* Avondale reserved all rights against its in-

surers to pursue CERCLA damages. *Id.* This Court formally approved the "Consent Judgment" entered into by Avondale and the Plaintiffs on February 8, 1996.

The Plaintiffs contend that they have the option of either executing by way of the assignment of rights against Avondale's insurers, i.e. either stepping into the shoes of the insured and litigating coverage and reasonableness of the settlement, or pursuing the insurers via direct action where the Plaintiffs must prove both liability on the part of Avondale and contract coverage. By assignment, the Plaintiffs agree that their recovery would be no greater than $24 million. However, if the Plaintiffs pursue the direct action, they contend that it is the trier of fact, not the contract between Avondale and the Plaintiffs, who determines liability and damages without limitation.

Travelers argues that as a result of the consent judgment, the only course of action for the Plaintiffs against Avondale's insurers is the assignment, and any recovery as a result of such action is capped at $24 million. In addition, the Insurers contend that the consent judgment between Avondale and the Plaintiffs acts as a final judgment as to the Plaintiffs and the Insurers, barring the Plaintiffs' direct action claim because of the doctrine of *res judicata.* Finally, the Insurers argue that even if the direct action is a viable option, Plaintiffs' damages should be capped at § 24 million.

### I

This Court has exclusive jurisdiction over all claims brought under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq,* and discretionary power pursuant to 28 U.S.C. § 1367(a) to exercise jurisdiction over supplemental state law claims. This Court has previously held that Louisiana law governs all direct actions pursuant to La.R.S. 22:655. Therefore, Louisiana law governs the resolution of this dispute.

A consent judgment is a bilateral contract wherein parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss. La.C.C. art. 3071; *Plaquemines Parish Government v. Getty Oil Company,* 673 So.2d 1002, 1005 (La.1996)(citing *Preston Oil Co. v. Transcontinental Gas Pipe Line Corp.,* 594 So.2d 908, 913 (La.App. 1st Cir.1991)). A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. *Bonaventure v. Pourciau,* 577 So.2d 742 (La.App. 1st Cir.1991). The interpretation of the consent judgment (i.e. the contract between the parties) is the determination of the common intent of the parties. La.C.C. art. 2045. The intent of the parties is, of course, reflected in the wording of their settlement agreement, and the most telling indication in this regard is a reservation by the plaintiff to proceed against the non-settling parties. *GHR Energy Corp. v. Carboline Company,* 744 F.Supp. 1408, 1410 (E.D.La.1990)(citing *Futch v. Fidelity & Casualty Company,* 246 La. 688, 166 So.2d 274, 277 (1964)).

Louisiana courts generally have required that in order for there to be a valid reservation of rights against a non-settling insurer, the issue of the insured's liability must remain unsettled and viable for the amount of insurance provided in the insurance policy of the non-settling insurer. *GHR Energy Corp. v. Carboline Company,* 744 F.Supp. 1408, 1409 (E.D.La.1990); *see also Futch v. Fidelity & Casualty Company,* 246 La. 688, 166 So.2d 274 (1964). The first step is to determine whether the settlement between [the plaintiff and the tortfeasor] produced the legal effect of wholly releasing the tortfeasor's obligation to the plaintiffs for all consequences of the tortfeasor's negligence. *Id.* 166 So.2d at 277. It is important to remember that *the tortfeasor's liability beyond that which was settled has not actually been compromised because it has not yet accrued.* By releasing the tortfeasor, the plaintiff is in fact only waiving its claim against the tortfeasor, while preserving its claim for that same liability against the [non-settling insurer]. *GHR Energy Corp. v. Carboline Company,* 744 F.Supp. at note 2.

### II

None of Avondale's insurers consented to the settlement agreement. The

parties to the negotiations, at all times, were only Avondale and the Plaintiffs. At no time did any of the Insurers offer nor could they be enticed to participate in the negotiations. Even at the "eleventh hour" of settlement negotiations, when Avondale and the Plaintiffs were ready to consummate a settlement, Travelers was again offered the opportunity arid refused to join in the settlement agreement. Therefore, the benefit of the bargain resulting from this agreement is not available to and may not arbitrarily be invoked by a stranger to the compromise, absent clear language stating otherwise in the settlement document. Travelers has riot offered any such language.

Instead, Travelers bravely represents to the Court that because Travelers was bound by its insurance contract with Avondale to pay Avondale's cost of defense, Avondale wore two hats at the negotiating table, its own and Travelers. Indeed, the argument continues, Avondale owed a duty to Travelers to protect Travelers' interest in the negotiations. Further, when asked hypothetically at oral argument if Travelers would agree to pay the amount of the cap, $24,000,000, if coverage was found in Phase IV, Travelers responded that the Insurers would fight the reasonableness of the settlement. In essence, the Insurers refused to negotiate, refused to join the agreement when it was being consummated, and refuse to consent to it now, yet ask the Court to allow them the benefit of a cap to protect the Insurers if liability and damages are found at trial to exceed $24 million.

This Court finds no clear evidence of the Travelers' consent to the terms of the settlement agreement between Avondale and the Plaintiffs. Therefore the terms of the agreement are only binding as to Avondale and the Plaintiffs.

### III

The Plaintiffs reserved their right to pursue their claims against Avondale's insurers. Part 5 of the Settlement Agreement states that "[i]n light of the insurers' refusal to provide coverage and/or participate in settlement. it may become necessary to file ... actions, third party claims and/or other suits or claims against the insurers." Avondale further agreed to cooperate in the prosecution of these claims.

■ The Insurers argue that because the Plaintiffs entered into a "judgment", they no longer have a claim to pursue because "a judgment against a defendant acts as a bar, i.e. is *res judicata* to any future actions based on that liability." *Avondale's Insurers' Brief.* The doctrine of *res judicata* fails because, in part, *res judicata* requires the presence of the same parties, and the dispute now before the Court involves a group that was not involved in the consent judgment—the Avondale insurers.

■ Insurers cite *Descant v. Administrators of Tulane Educ. Fund*, 639 So.2d 246 (La.1994) as support and for the proposition that a limitation to an insured's liability that is an affirmative defense for the insured is also available as an affirmative defense for the insurer. However, *Descant* involves Louisiana's Medical Malpractice Act, passed by the Legislature to protect physicians from the soaring costs of malpractice insurance and to protect insurers from outrageous damage awards of "runaway juries" in malpractice actions. On the other hand, the Direct Action Statute was passed by the Legislature for the purpose of protecting the victim from insurers who attempt to avoid coverage after collecting premiums from the insured-tortfeasor. La.R.S. 22:655(D) (West 1996); *see generally* 15 William Shelby McKenzie, H. Alston Johnson, III, *Louisiana Civil Law Treatise Insurance Practice*, § 22 (1996). The Louisiana Legislature would not tolerate nor will this Court consider the use of a settlement agreement between the victim and the tortfeasor to limit or bar the victim's right of direct action against the nonsettling insurer, particularly where the victim specifically reserved this right in the settlement agreement. *See Carona v. State Farm Insurance Company*, 458 So.2d 1275 (La.1984); *Futch v. Fidelity & Casualty*, 136 So.2d 724 (La.App. 2d Cir.1961).

Insurers also rely on *Dumas v. United States Fidelity & Guar. Co.*, 241 La. 1096, 134 So.2d 45 (1961) for the proposition that "[t]he insurers cannot have liability above

and beyond their insured's responsibility for a given injury." *Brief of Avondale Insurers.* The situation in *Dumas* is squarely governed by the Civil Code, is factually distinguishable and thus not relevant to the dispute at bar. In *Dumas,* Mrs. Dumas was driving her husband's car when she caused an accident injuring her husband who was a passenger in the car. Mr. Dumas instituted a suit against his wife's liability carrier, USF & G, but before the outcome was determined, Mr. Dumas died of an unrelated cause. Mrs. Dumas, as surviving spouse, became vested by operation of law with the exclusive right to pursue this action. Article 2217 of the Civil Code declares that "[w]hen the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation," and Article 2218 states that "[t]he confusion that takes place in the person of the principal debtor avails his sureties." Insurers misread *Dumas* when they argue that it supports the position that settlement with the tortfeasor extinguishes the right of the victim to pursue the tortfeasor's nonsettling insurer.

■■■■■ A third case relied on by Insurers is *Shaw v. New York Fire & Marine Underwriters,* 252 La. 653, 212 So.2d 416, 418 (1968) for the proposition that a tortfeasor's insurers are solidarily liable with the tortfeasor only to the extent of the tortfeasor's liability. Avondale's insurers are solidarily liable to the Plaintiffs for the liability of Avondale. However, Avondale's *liability* has yet to be determined and can only be determined by the trier of fact. Parties to a litigation do not determine each other's liability through their own settlement and compromise. By entering into the consent judgment with Avondale, the Plaintiffs simply have waived their right to pursue *Avondale* for more damages regardless of how serious Avondale's liability is determined to be at trial.

Counsel for Insurers admitted and this Court agrees that theirs was a difficult argument to make, and, though argument was eloquently presented by both sides, this Court finds no legal, logical, or equitable support for the Insurers' motion.

Therefore, the Motion by Avondale's Insurers for Partial Summary Judgment Declaring their maximum Liability to the Plaintiffs to be $24 Million and Dismissing the Direct Action Claims is hereby DENIED.

### Motion by Bellefonte Underwriters and Compass

### Motion by First Horizon

### Motion by Carrier

These Insurers contend that by virtue of the Plaintiffs' settlement and subsequent release of their respective insureds, Plaintiffs have foreclosed their right to pursue a direct action against the nonsettling Insurers. Insurers also rely heavily on *Descant, supra,* urging the Court to find that the settlement agreement between the insureds and the Plaintiffs limited the liability of the respective insureds and therefore limited the liability of the nonsettling Insurers.

■■■■ Absent a clear intent to release a non-settling insurer, a settlement between the plaintiff and the tortfeasor leaves viable those claims of the plaintiff against the nonsettling insurers. *GHR Energy Corp. v. Carboline Company,* 744 F.Supp. at 1410; *Wirick v. Wyble,* 300 So.2d 571, 573 (La.App. 3rd Cir.1974). The release of the tortfeasor does not eliminate the insurer's responsibility for the tortfeasor's liability. *Id.*

Without clear evidence in the settlement agreements between the Plaintiffs and Williams–McWilliams and the Plaintiffs and Frank G. Sullivan, Contractor, that the Plaintiffs intended to release these Insurers, Plaintiffs' direct action claims remain viable. The Insurers have produced no such evidence.

For all the reasons discussed above, this Court hereby DENIES these three motions.