887 So.2d 73 (2004)
Zander SUMRALL, III
v.
Cole BICKHAM, Continental Casualty Company, Ralph "Doc" Smith, Janice Smith Moak, Benjamin "Hut" Moak, Joetta Smith Stevens, ABC Insurance Company, and DEF Insurance Company.
No. 2003 CW 1252R.
Court of Appeal of Louisiana, First Circuit.
September 8, 2004.
*75 Tom W. Thornhill, Chadwick W. Collings, Slidell, M. Reggie Simmons, Franklinton, for Plaintiff-Respondent, Zander Sumrall, III.
Andrew Blanchfield, Chad A. Sullivan, Baton Rouge, for Defendant-Relator, Continental Insurance Company.
Charles M. Hughes, Jr., Cheryl I. Magee, Mandeville, for Defendant, Ralph Smith.
William J. Knight, Franklinton, for Defendant, William Cole Bickham.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C. J.
The sole issue for our consideration in this writ action is whether the plaintiff's pretrial settlement and dismissal of all claims against the alleged tortfeasor automatically resulted in a release of the tortfeasor's liability insurer from its contractual obligation.

FACTS AND PROCEDURAL HISTORY
This case arose out of a physical altercation shortly after midnight on December 5, 1999, between plaintiff-respondent, Zander Sumrall, III, and defendant, William Cole Bickham, who were both attending an outdoor party hosted by friends. It is alleged that alcoholic beverages were being consumed and illegal drugs were being used at the party. Sumrall was seriously injured when Bickham tackled him from behind as he attempted to leave the party after a fight broke out. At the time of the incident, Bickham, who was home on leave from the U.S. Army, believed that Sumrall was retrieving a gun from his vehicle. Bickham's impact caused an injury to Sumrall's left leg as well as a severe hip injury, resulting in a permanent limp and weakness.
Sumrall filed suit against Bickham and defendant-relator, Continental Insurance Company (Continental), the homeowner insurer for Bickham's father.[1] Bickham filed a motion requesting a stay of the proceedings against him pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940.[2] Sumrall later settled his claims against Bickham, releasing him from the suit.[3] In the receipt and release agreement (the release agreement), Sumrall expressly agreed, in exchange for the compensation he received, to:

*76 RELEASE, ACQUIT, AND FOREVER DISCHARGE William Cole Bickham from any and all actions, claims, demands, damages, costs, loss of services, expenses, and compensation on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an incident that occurred on or about the 5th day of December, 1999, ... reserving to said Zander Sumrall, III all rights as to all other parties, named or unnamed, including specifically, but without limitation, all rights as to Continental Insurance Company, the insurer of William Cole Bickham, ....
* * *
It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the payor or of the persons, firms, and corporations released hereby, by all of whom liability is expressly denied. (Italics added.)
The trial court signed a judgment of dismissal in accordance with the terms of the settlement agreement, dismissing Sumrall's claim with prejudice as to Bickham "only," and expressly reserving all rights as to Continental. Shortly thereafter, Continental filed a motion for summary judgment, based in part on the language of the release agreement and the judgment of dismissal. The trial court denied the motion, and Continental applied to this court for supervisory review.[4]
In its writ application to this court, Continental raised two issues: (1) whether certain policy exclusions applied to deny coverage of the underlying claim, and (2) whether the dismissal of its insured, Bickham, resulted in the discharge of its obligation under the policy to provide coverage for Sumrall's damages. Following our review of the application, we denied the writ. Sumrall v. Bickham, 03-1252 (La.App. 1 Cir. 9/22/03) (unpublished writ action).[5]
Continental then applied to the Louisiana Supreme Court for supervisory and/or remedial review. The writ was granted and by per curiam order, the matter was remanded to this court for an "opinion solely on the issue of whether a plaintiff's settlement with an insured eliminates an insurer's obligation to pay the plaintiff according to the terms that the policy would otherwise require." Sumrall v. Bickham, 03-2965 (La.1/30/04), 865 So.2d 44 (emphasis added).[6] It is in this procedural posture that the matter now comes before us.

LAW AND ANALYSIS
Continental asserts that its policy only obligates it to pay claims for which its insured is legally liable.[7] Continental's *77 argument is that because Sumrall settled with and fully released Bickham from the lawsuit, a "natural consequence" of the release is that Bickham can no longer be found legally liable for Sumrall's injuries, and therefore, Continental's policy obligation cannot be triggered. Sumrall counters this argument by noting that Bickham's release and concomitant dismissal from the action was unambiguous and it affected only Bickham. Sumrall points to the express and specific reservation of rights as to Continental in the release agreement, as well as the clear statement in the agreement that Sumrall's settlement with Bickham was not to be construed as an admission of liability by Bickham, which was expressly denied.
Louisiana law provides that the scope of a compromise agreement extends to the differences clearly comprehended by the parties, not to differences that the parties never intended to include. See LSA-C.C. art. 3073. In the release agreement, Sumrall unambiguously released Bickham from all "actions, claims, demands, damages, costs, loss of services, expenses, and compensation on account of, or in any way growing out of ... [the] incident ... reserving to ... Sumrall ... all rights as to all other parties, ... including specifically, but without limitation, all rights as to Continental... the insurer of ... Bickham." (Emphasis added.) The release language shows that the parties, Bickham and Sumrall, clearly comprehended and intended that Sumrall would maintain his rights to pursue Bickham's liability insurer, Continental. The release agreement expressly provides that Bickham's settlement with Sumrall "is not to be construed as an admission of liability" on the part of Bickham. The agreement goes on to clearly state that Bickham "expressly denie[s]" liability. Similarly, the judgment dismissing Bickham tracks the language of the release agreement, inserting the word "only" after Bickham, emphasizing the intent of the parties that only Bickham was released by the settlement.
There is no dispute concerning the facts. There is no evidence filed into the record substantiating any mistaken intent by either party to the release agreement. Therefore, the jurisprudence regarding cases where genuine issues of material fact were found to exist as to the intent of the parties in a release agreement are not helpful to our analysis in this case.[8] Continental was not involved in the settlement between Sumrall and Bickham. Since Continental was not a party to the release agreement, it has no right to raise the issue of Sumrall and Bickham's intent upon entering into their settlement. See Duet v. Lucky, 621 So.2d 168, 172 (La.App. 4 Cir.1993). Furthermore, Continental has not produced any evidence to prove that the intent of the parties to the compromise was anything other than what is portrayed by the clear language in the release agreement. Thus, our interpretation of the release agreement does not require an inquiry outside the four corners of the agreement to ascertain intent. See Gaubert v. Toyota Motor Sales U.S.A., *78 Inc., 99-2569 (La.App. 1 Cir. 11/3/00), 770 So.2d 879, 882.
We are called upon to examine and interpret the language of the release agreement, as well as the pertinent policy provision regarding Continental's obligation to pay any claim for which Bickham becomes "legally liable." Our interpretation involves the single issue surrounding the legal effect of Bickham's release with respect to Sumrall's rights against Continental. The issue presents a question of law, which is appropriate for decision by summary judgment; our review must be de novo. Smith v. Williams, 03-0433 (La.App. 1 Cir. 5/14/04), 879 So.2d 233, 235-36; Gaubert, 770 So.2d at 882. Appellate review of legal questions simply involves a determination as to whether the trial court's decision was legally correct. Simmons v. Berry, 98-0660 (La.App. 1 Cir. 12/22/00), 779 So.2d 910, 913-914.
We disagree with Continental's assertion that a liability insurer has no independent liability simply because its insured has been released pursuant to a pretrial settlement agreement with the plaintiff. Because Continental was not involved in negotiating the settlement agreement between Bickham and Sumrall, and was not a party to the compromise, Continental should not now be able to claim the benefit of the agreement by declaring that it should automatically be dismissed from the lawsuit as a natural consequence of the release of its insured. This is especially compelling in light of the clear language in the release agreement stating that Bickham was expressly denying all liability and that Sumrall was specifically reserving all rights "without limitation" as to Continental. See In re Combustion, Inc., 960 F.Supp. 1051, 1054 (W.D.La.1997).
We have previously recognized in Rodriguez v. Louisiana Tank, Inc., 94-0200 (La.App. 1 Cir. 6/23/95), 657 So.2d 1363, 1367-1368, writ denied, 95-2268 (La.11/27/95), 663 So.2d 739, that the release of an insured does not release the liability insurer, particularly where the plaintiff clearly intends to reserve rights against the insurer. In so holding, we reasoned that voluntary settlement of disputes, even in part, are favored in the law and parties should be allowed to reserve rights not otherwise compromised. Similarly, the third circuit has recently held in Finnie v. LeBlanc, 03-1013 (La.App. 3 Cir. 3/10/04), 875 So.2d 71, 76-77, that a partial dismissal of a tortfeasor, reserving the right to proceed against him "to the extent that he was insured" by the liability insurer was sufficient to maintain the plaintiff's suit against the insurer. However, we do not believe that the limiting language in the Finnie release, "to the extent that he was insured," is necessary for a plaintiff to properly reserve his rights against the liability insurer of a released tortfeasor. This is especially true in this case, because the settlement agreement did not acknowledge liability on the part of the tortfeasor, and legal liability has yet to be determined.
We recognize that Continental cannot be independently liable to Sumrall without the liability of Bickham first being found by the trial court or a jury or by an acknowledgment of liability on the part of its insured. See Mallet v. Credo Oil & Gas, Inc., 534 So.2d 126, 129-130, writ denied, 536 So.2d 1237 (La.1989). Settlement agreements are generally inadmissible to prove liability. See Wells v. Allstate Ins. Co., 510 So.2d 763, 766 (La.App. 1 Cir.), writ denied, 514 So.2d 463 (La.1987). Delictual liability consists of fault, causation, and damage. To establish liability, a plaintiff must prove that the defendant's fault caused some legally compensable damage. See Hall v. Brookshire Brothers, Ltd., 02-2404 (La.6/27/03), 848 *79 So.2d 559, 567.[9] "Liability" is defined in BLACK'S LAW DICTIONARY, 915 (6th ed.1990), as "[b]ound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution." Similarly, "legally liable" is defined as "[l]iable under law as interpreted by courts." Id. at 895. An insured-tortfeasor can be "legally liable" for the victim's damages, even though he cannot be cast in judgment due to his release from liability.
The Direct Action Statute, LSA-R.S. 22:655, expressly states that a liability insurer and its insured are solidarily liable to the victim. However, the solidarity between the insured and the insurer toward the victim is only within the policy limits and coverages. See William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, § 28 in 15 Louisiana Civil Law Treatise (1996). Louisiana jurisprudence has consistently held that a liability insurer and its insured are co-debtors in solido. See Wertz v. Estes, 402 So.2d 166, 168 (La.App. 1 Cir.1981). Yet it is clear that a liability insurer is not liable beyond its policy limits. The solidary obligation arises from different sources: it is delictual in nature for the insured and contractual in nature for the insurer.[10] Therefore, the liability insurer and the insured-tortfeasor are solidarily liable to the victim, but possibly for different amounts. A tortfeasor may be found liable for an amount above and beyond the liability policy limits, potentially exposing an excess insurer's liability.[11]
We emphasize that in this particular instance, Bickham's liability has yet to be determined and can only be determined by the trier of fact.[12] Bickham expressly denied liability in the release agreement. The settlement, evidenced by the release agreement, did not determine Bickham's or any other person's legal liability. By entering into the settlement agreement and releasing Bickham, Sumrall simply waived his right to pursue Bickham for more damages regardless of how serious Sumrall's injuries are eventually determined to be at trial. Sumrall waived his claim against Bickham, while specifically preserving his claim against the non-settling insurer, Continental.[13]
The Direct Action Statute was passed for the purpose of protecting plaintiffs from insurers who attempt to avoid coverage after collecting premiums from insured-tortfeasors. LSA-R.S. 22:655D; see William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, § 22 in 15 Louisiana Civil Law Treatise (1996). For all of these reasons, we hold that the settlement between Sumrall and Bickham resulting in Bickham's release did not bar Sumrall's separate right to pursue Bickham's non-settling insurer, Continental, through a direct action. We believe this view to be correct in this case, particularly in light of the additional *80 facts that Sumrall specifically reserved his rights against Continental in the release agreement while simultaneously denying any admission of liability. See In re Combustion, 960 F.Supp. at 1054.

CONCLUSION
After considering the law and the contracts involved in this matter, we hereby deny defendant-relator's writ, thereby affirming the trial court's judgment denying the relator's motion for summary judgment on the basis addressed in this opinion.
We hold as a matter of law, that absent a clear intent to release the non-settling insurer, the release of the insured-tortfeasor pursuant to a compromise agreement between the insured-tortfeasor and the plaintiff, with an express reservation of rights as to the non-settling insurer, as well as an express denial of liability by the insured-tortfeasor, does not eliminate the insurer's responsibility for the tortfeasor's potential liability. Essentially, as long as it can be determined in a settlement agreement (such as the release agreement in the present case) that liability has not been acknowledged or determined, and the plaintiff did not intend to release its claims against the non-settling insurer, the non-settling insurer will still be responsible for its insured's potential liability for damages at the contracted coverage level. The non-settling insurer in this case has not produced any evidence that the plaintiff intended to release it from liability. Thus, plaintiff-respondent's direct action claim against the defendant-relator remains viable.
We also note that the decision reached in this opinion is in conformity with the general policy of promoting settlement of lawsuits. See Rodriguez, 657 So.2d at 1368. Were we to rule otherwise, the precedential impact of this case would only serve to discourage settlements in cases where some, but not all, of the parties wanted to compromise and settle the plaintiff's claims against them. GHR Energy Corp. v. Carboline Co., 744 F.Supp. 1408, 1411-1412. (E.D.La.1990).
All costs are assessed against defendant-relator, Continental Insurance Company. This matter is remanded to the trial court for further proceedings consistent with this opinion.
WRIT DENIED; TRIAL COURT JUDGMENT AFFIRMED; REMANDED.
PARRO, J., concurs and assigns reasons.
PARRO, J., concurring in the result.
Former Louisiana Civil Code article 2203 (1870) stated that an obligee who remitted a debt in favor of one solidary obligor without expressly reserving his right against the others was deemed to have forfeited the entire obligation. According to the revision comments accompanying the 1984 amendments to the Civil Code provisions on obligations, this rule, whereby an express reservation was required to preserve a claim against a solidary obligor, was the subject of much criticism. LSA-C.C. art. 1803, Revision Comments  1984, Comment (e). Accordingly, this rule was abandoned in favor of its converse, namely, that when partial payment is received, solidary liability is preserved unless it is expressly renounced. Article 1802 now states:
Renunciation of solidarity by the obligee in favor of one or more of his obligors must be express. An obligee who receives a partial performance from an obligor separately preserves the solidary obligation against all his obligors after deduction of that partial performance.
*81 The revision comments accompanying Article 1802 state that it is a new provision and changes the law insofar as it eliminates the presumption of renunciation or waiver of solidarity in the absence of a reservation by the obligee. LSA-C.C. art. 1802, Revision Comments  1984, Comment (a). Article 1803 makes it clear that this result also applies to the remission of a debt by the obligee in favor of one obligor or a transaction or compromise between the obligee and one obligor. As that is the precise situation before us in this writ action, I write to emphasize this change in the law and its impact on this case.[1]
Therefore, I respectfully concur.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
The supreme court remanded this matter to our court to expressly consider "the issue of whether a plaintiff's settlement with an insured eliminates an insurer's obligation to pay the plaintiff according to the terms that the policy would otherwise require." Sumrall v. Bickham, 03-2965 (La.1/30/04), 865 So.2d 44 (emphasis added). In this case, Continental's policy provided that coverage applies to an occurrence for which the insured is "legally liable, including prejudgment interest awarded...." Continental contends that there can be no finding of legal liability on the part of Bickham as a result of his full release from this legal action brought to determine his legal liability and thus coverage under the policy cannot be invoked. I agree.
The majority finds that Sumrall waived his claim against Bickham, while specifically preserving his claim against the non-settling insurer, Continental. I disagree. The release of Bickham from this suit, without limitation, destroyed the contractual prerequisite needed to pursue the insurer and rendered meaningless any reservation of rights against said insurer. The majority gives an excellent example of sufficient limiting language, which would have properly reserved Sumrall's rights against Continental, when it cites the "to the extent that he was insured" language of the release used in Finnie v. LeBlanc, 03-1013, pp. 5-6 (La.App. 3rd Cir.3/10/04), 875 So.2d 71, 76-77.
The language of the release in this case accomplished all that the parties to it intended and they both received what was specifically bargained for. It first fully *82 released Bickham. Next, it reserved all remaining rights that Sumrall had against Continental after Bickham's release. However, the consequence of the unlimited language releasing Bickham from the current legal action and agreeing not to pursue further action necessary to have Bickham determined legally liable, rendered meaningless the reservation of rights against Continental. The specific terms of Continental's policy provided that its liability is contingent on Bickham being determined to be legally liable. Sumrall should have made as a part of his bargain that Bickham would be kept in the suit to determine the extent of his liability only for the purpose of pursuing Continental, but instead the bargain he struck let Bickham out completely.
I am of the humble opinion that some significance must be given to the insurer's decision to qualify the term "liable" with the word "legally." The majority would hold that the "legally liable" language of the Continental policy simply means "fault" or "negligence" and would judicially write out of the policy the modifying term "legally" and make the insurer liable in a manner not contemplated or bargained for in the insurance contract with its insured. Continental did not contract to be liable for Bickham's negligence unless that negligence rendered him legally liable and Sumrall agreed in the release not to pursue that legal determination in this suit or any other action.
It is an established tenet of our law that it is not the province of the courts to relieve a party of a bad bargain, no matter how harsh. Sunrise Construction and Development Corporation v. Coast Waterworks, Inc., 00-0300 (La. App 1st Cir. 6/22/01), 806 So.2d 1, 5, writ denied, 01-2577 (La.1/11/02), 807 So.2d 235. To the extent that Sumrall failed to reserve his rights to pursue a determination of Bickham's legal liability for the purpose of establishing coverage for the occurrence under the policy of insurance issued by Continental, the unqualified release of Bickham resulted in the discharge of any obligation by Continental to provide coverage for Sumrall's claims herein. To hold otherwise amounts to a revision of the terms of the contract between Continental and its insured in order to relieve Sumrall of having to face the consequences of a bad bargain of his own making.
Based on the above stated reasons, I respectfully dissent from the majority opinion in this matter
NOTES
[1] Sumrall's petition named several additional defendants not relevant to this writ application. The petition also incorrectly referred to Continental as "Continental Casualty Company."
[2] See 50 U.S.C.App. § 521.
[3] In his brief to this court, Sumrall explained that it was necessary to release Bickham, who is on active duty with the Army, in order to avoid a stay of the action.
[4] Additionally, Continental sought dismissal of the suit based on a policy exclusion for intentional acts. Sumrall filed a cross-motion for summary judgment seeking a declaration of coverage under the Continental policy. The trial court rejected both bases for Continental's motion and also denied Sumrall's cross-motion for summary judgment, finding the existence of genuine issues of material fact.
[5] Parro, J., dissented and would have granted the writ, finding that policy exclusions applied to deny coverage.
[6] As directed, we only address Continental's second contention that after its insured was dismissed from the suit, Sumrall's action against it could no longer be maintained because the sole basis for its coverage is the legal liability of its insured.
[7] The pertinent policy provision is as follows:

PERSONAL LIABILITY  INSURING AGREEMENT
If a claim or suit is brought against you or any covered person for the following:
* * *
2. Bodily Injury; ...
* * *
caused by an occurrence to which this coverage applies, we will:
1. Pay on your behalf claims for which you or any covered person are legally liable, including prejudgment interest awarded against you or any covered person, up to our limit of liability; ....
(Some emphasis added.)
[8] For example, see Rollins v. Richardson, 02-0556 (La.12/4/02), 833 So.2d 921, 924-925.
[9] In Hall, the supreme court discussed the meaning of "liability" within the context of comparative fault under LSA-C.C. art. 2323 and the Medical Malpractice Act.
[10] LSA-C.C. art. 1797 recognizes that a solidary obligation may derive from a different source for each obligor.
[11] It is important to note that Continental is not an excess insurer in this case; therefore, the jurisprudence maintaining actions against excess and/or uninsured motorist insurers after the insured-tortfeasor has been released does not apply in this case. In reviewing this issue, we must first make a distinction as to the type of insurer involved.
[12] See Garrett v. Safeco Ins. Co., 433 So.2d 209, 210 (La.App. 2 Cir.1983).
[13] For a similar scenario, see In re Combustion, 960 F.Supp. at 1055.
[1] This court's only previous discussion of this change in the law occurred in the context of tortious activity that preceded the enactment of Article 1803, and Involved settlements not in the record that probably were confected after its enactment. Hebert v. ANCO Insulation, Inc., 00-1929 (La.App. 1st Cir.7/31/02), 835 So.2d 483, 494, writs denied, 02-2956 & 2959 (La.2/21/03), 837 So.2d 629. While we believe the dissenters' position on this issue had merit, we are not faced with that factual situation, as both the tortious activity and settlement in this case occurred long after the enactment of Article 1803. Compare Lee v. Missouri Pacific R.R. Co., 540 So.2d 287, 294 (La.1989)(ruling on a prescription exception that because the settlement with the Missouri Pacific Railroad Company was made after the effective date of Article 1803, the remission of debt in favor of one obligor did not extinguish the solidary obligation). Therefore, the new provision is clearly applicable to the case we are reviewing. Cf. also Breaux v. Avondale Indus., Inc., 04-1138 (La.App. 4th Cir.7/14/04), 880 So.2d 36, 37 (citing Article 1803 and concluding that when the release at issue was confected in Texas in 2001, Louisiana law no longer required that a reservation of rights be included in the release to protect a settling plaintiff's right to pursue his or her claims against non-settling solidary obligors); King v. Doctor's Hosp. of Opelousas, 01-1534 (La.App. 3rd Cir.5/8/02), 817 So.2d 473, 478, writ denied, 02-1553 (La.9/30/02), 825 So.2d 1193; Cates v. Wausau Ins. Co., 508 So.2d 1031, 1032 n.1 (La.App. 5th Cir.1987).