| | |
|---|---|
| SHANE SALATHE | NO. 21-C-271 |
| VERSUS | FIFTH CIRCUIT |
| THE PARISH OF JEFFERSON THROUGH THE DEPARTMENT OF SEWERAGE | COURT OF APPEAL |
| | STATE OF LOUISIANA |

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Assistant Deputy, Clerk of Court

June 30, 2021

Alexis Barteet
Assistant Deputy Clerk

**IN RE** KAREN G. SALATHE AND WAYNE SALATHE

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE SHAYNA BEEVERS MORVANT, DIVISION "M", NUMBER 749-298

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

## WRIT GRANTED, JUDGMENT REVERSED IN PART

This case has been before this Court several times previously.[1] In the present writ application, plaintiffs[2] seek review of the portion of the trial court's partial summary judgment recognizing a $1 million credit in favor of excess insurer American Alternative Insurance Company ("AAIC"), on the basis that a non-coextensive insurer, Amerisure, settled with plaintiffs.

---

[1] *See* (1) *Salathe v. Parish of Jefferson through Dep't of Sewerage*, 17-601 (La. App. 5 Cir. 11/14/17) (unpub.) (reversing trial court's partial summary judgment that dismissed plaintiff's claims regarding Amerisure's OCP policy and finding that genuine issues of material fact remained with respect to the term "general supervision" under the OCP policy); (2) *Salathe*, 18-447 (La. App. 5 Cir. 12/19/18), 262 So.3d 429 (reversing, on procedural grounds, trial court's grant of summary judgment in favor of Fleming's insurers, Amerisure and Alterra); (3) *Salathe*, 19-145 (La. App. 5 Cir. 4/24/19) (unpub.) (denying plaintiffs' writ application seeking review of trial court's order denying plaintiffs' motion to strike Amerisure's motion for summary judgment on *res judicata* grounds); (4) *Salathe*, 19-251 (La. App. 5 Cir. 7/22/19), 2019 WL 3294958 (granting Amerisure's writ in part and denying it in part as to coverage and application of Amerisure's OCP policy); (5) *Salathe*, 19-303 c/w 19-427 (La. App. 5 Cir. 7/15/20), 300 So.3d 460, *writ denied*, 20-1027 (La. 11/4/20), 303 So.3d 642 (affirming trial court's grant of partial summary judgment in favor of Amerisure and Alterra, to the extent the Amerisure CGL policy and Alterra's excess policy could be interpreted as providing coverage for the Parish's own, sole, joint or concurrent negligence); (6) *Salathe*, 19-492 (La. App. 5 Cir. 2/18/20) (unpub.) (writ not considered); and (7) *Salathe*, 19-497 (La. App. 5 Cir. 10/21/20), 305 So.3d 1030 (affirming trial court's dismissal of Amerisure's petition of intervention seeking reimbursement of worker's compensation benefits paid to the injured plaintiff).

[2] After Mr. Salathe's death, the trial court granted his parents' motion to substitute themselves as his legal successors in this litigation.

The facts relevant to the present writ application are as follows: in November 2014 the Consolidated Sewerage District No. 1 of the Parish of Jefferson ("the Parish") and Fleming Construction Company, LLC ("Fleming") entered a contract for replacement or restoration of existing sewer mains. In January 2015, a Fleming foreman, Shane Salathe, was injured when he fell almost thirty feet to the bottom of a wet well where he was working. Mr. Salathe sued the Parish for, among other things, failure to maintain the access hatch to the well and failure to supervise Fleming. Mr. Salathe also named as defendants the Parish's excess insurer, AAIC, whose policy provided coverage to the Parish for its liability above the Parish's $1 Million "retained limit;" and Amerisure and Alterra, insurers with whom Fleming contracted on the Parish's behalf pursuant to the terms of the contract between the Parish and Fleming.[3]

Fleming procured from Amerisure a Commercial General Liability policy and, from Alterra America Insurance Company, a Commercial Excess Liability policy.[4] Fleming also procured from Amerisure an Owners and Contractors Protective Liability ("OCP") Policy, which identified the Parish as the named insured and Fleming as the "designated contractor." Under the OCP policy, Amerisure will pay the amounts the Parish is obligated to pay for "bodily injury" caused by an occurrence that arises out of (a) Fleming's operations performed for the Parish, or (b) in connection with the Parish's general supervision of such operations. The terms of the OCP policy provide that it is primary to any other insurance available to the Parish:

> The insurance provided by this Coverage Part is primary insurance available to you [the Parish] unless the other insurance is provided by a contractor other than the designated "contractor" for the same operation and job location designated in the Declarations. Then we will share with that other insurance in the method described below….

Pursuant to the AAIC excess policy, AAIC agrees to indemnify the Parish "for Ultimate Net Loss, in excess of the Retained Limit, that results from damages the Insured becomes legally obligated to pay [for injuries] to which the insurance under this Coverage Part applies[.]" Under "Other Insurance," the AAIC policy further provides, in pertinent part:

> If insurance with any other insurer is available to cover a Claim for an Insured for any coverage under this policy whether on a primary, excess or continuous basis, the insurance under this policy is excess of and does NOT contribute with such other insurance.

---

[3] The contract required Fleming to procure certain insurance that named the Parish as an additional insured.

[4] In a previous appeal, this Court affirmed the trial court's judgment dismissing with prejudice all claims asserted against Amerisure's CGL policy and Alterra's Excess Liability policy to the extent that the policies could be interpreted as providing coverage for the Parish's own, sole, joint or concurrent negligence, pursuant to Louisiana's anti-indemnity statute, La. R.S. 9:2780.1. *See Salathe v. Parish of Jefferson through Dep't of Sewerage*, 19-427 (La. App. 5 Cir. 7/15/20), 300 So.3d 460, 473, *writ denied*, 20-1027 (La. 11/4/20), 303 So.3d 642.

> It is also agreed that such other insurance is excess over the Retained Limit and we will NOT make any payments until the other insurance and the Retained Limit have been exhausted.

In April 2021, plaintiffs, the Parish, and Amerisure executed a Compromise and Settlement Agreement and Release in which the plaintiffs settled with the Parish for $750,000 (below the Parish's $1 million retained limit), and with Amerisure for $550,000 (below the $1 million OCP policy limit). AAIC was not a party to the Settlement.

The Settlement between plaintiffs and the Parish was confected pursuant to *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La. App. 4th Cir. 1980), *writs denied*, 396 So.2d 921 and 922 (La. 1981),[5] and *Futch v. Fidelity & Cas. Co.*, 246 La. 688, 166 So.2d 274 (La. 1964), which effectively acknowledged that AAIC was entitled to a $1 million credit equal to the Parish's retained limit, and the Parish would remain in the lawsuit as a nominal defendant so that plaintiffs could maintain a direct action against AAIC. As to the Settlement between plaintiffs and Amerisure, however, the parties did not intend for the OCP policy limits to be used as a credit on the AAIC policy:

> [Plaintiffs] and Amerisure expressly do not intend or expect the amount paid under the Amerisure OCP policy, or the Amerisure OCP policy limits, to be used as a credit or predicate for the application of the AAIC policy. [The Parish] expressly does not take any position with respect to whether the amount paid under the Amerisure OCP policy, or the Amerisure OCP policy limits, can or will be used as a credit or predicate for the application of the AAIC policy.

The Settlement further provided that "all Part[ies] to this Agreement expressly deny all liability on or for any and all Claims."

AAIC filed a motion for summary judgment arguing that plaintiffs' claims against it should be dismissed because its excess policy has not been triggered, either through actual exhaustion of the Parish's retained limit and the Amerisure OCP policy limit, or through constructive exhaustion of the primary insurance limits through a *Gasquet* settlement. AAIC further argued: "Alternatively, and only in the event this Court finds that the AAIC policy is triggered, AAIC is entitled to a $2 million credit for Jefferson Parish's $1 million 'retained limit' and the OCP Policy's $1 million limit."

After a hearing, the trial court determined that the issue of whether AAIC's excess policy is triggered was premature but found that AAIC was nevertheless entitled to a $2 million credit, based on plaintiffs' settlement with (i) the Parish, entitling AAIC to a $1 million credit equal to the Parish's retained limit; and (ii) Amerisure, whose $1 million OCP policy is primary to AAIC's excess policy.

---

[5] In *Gasquet*, the Court held that the plaintiff's release of the primary insurer and partial release of the tortfeasor for less than the full primary limits, which granted a credit for the full primary limits and reserved the right to proceed against the excess carrier, did not release the excess insurer from its liability, agreeing that the trial court properly overruled the excess carrier's motion for summary judgment. 391 So.2d at 472.

In the present writ application plaintiffs are not disputing the portion of the trial court's judgment granting a $1 million credit to AAIC pursuant to the Parish's retained limit. Rather, plaintiffs seek review of that portion of the judgment granting AAIC an additional $1 million credit based on plaintiffs' settlement with Amerisure. We review the trial court's determination on summary judgment *de novo*. *Lahare v. Valentine Mechanical Servs., LLC*, 17-289 (La. App. 5 Cir. 6/29/17), 223 So.3d 773, 775.

Plaintiffs contend that genuine issues of material fact exist as to whether the OCP policy is "available to cover" plaintiffs' claims within the meaning of the "other insurance" provision of AAIC's policy. They argue that before it can be determined whether the AAIC policy is excess to the Amerisure OCP policy, it must first be determined whether the Parish's liability is the type covered by the OCP policy.[6] If the Parish is found liable based on actions or inactions not covered by the OCP policy, the AAIC policy would be primary, not excess, with no credit for "such other [available] insurance."

Plaintiffs also argue that the trial court's judgment awards AAIC a greater credit than it might have been entitled to receive under the terms of its own policy. Plaintiffs argue that AAIC is entitled to no more of a credit because of a settlement than it would be without the settlement. According to plaintiffs, awarding AAIC an automatic *Gasquet* credit for the full $1 million OCP policy limits, simply because of the settlement, unfairly punishes plaintiffs for settling and jeopardizes partial settlements between tort victims and insurers involving non-coextensive insurance policies. Plaintiffs contend that a purported excess insurer has no incentive to settle or join in a settlement if it can get an automatic reduction of its contractual liability by refusing to settle. Plaintiffs do not dispute that the AAIC policy could be excess of the OCP policy, nor do they dispute that AAIC could be entitled to a credit, but they contend that any credit based on the OCP policy would exist only to the extent that the OCP policy would cover plaintiffs' claims, as determined by the trial court after a trial on the merits.

AAIC responds that because Amerisure has settled with plaintiffs, there will be no determination as to coverage under the OCP policy; coverage is deemed admitted pursuant to the Settlement, and AAIC is entitled to a full credit for the OCP policy limits. When an insurer settles with a claimant, if entered voluntarily and with knowledge of facts indicating coverage, an insurer waives its defense of non-coverage. *See Employers Mut. Liability Ins. of Wisconsin v. Sears, Roebuck & Co.*, 621 F.2d 746, 747 (5th Cir. 1980). AAIC further argues that its "Other Insurance" provision requires only that there be insurance "available," and other insurance is available here in the form of Amerisure's OCP policy.

We find that genuine issues of material fact remain regarding the credit, if any, to which AAIC may be entitled pursuant to the terms of its own policy. The AAIC policy's "Other Insurance" provision states: "**If** insurance with any other insurer **is available to cover a Claim** for an Insured for any coverage under this policy…." (Emphasis added). Other insurance must not only be available, but "available to cover a Claim." Amerisure's agreement to settle plaintiffs' claims cannot benefit AAIC in the form of an automatic credit for the full OCP policy

---

[6] For example, plaintiffs point out that the OCP policy would not provide coverage to the extent the Parish is liable for a defective hatch cover in the sewerage lift station, but the OCP policy may provide coverage if the Parish is found to have negligently supervised Fleming. *See Salathe*, 19-251 (La. App. 5 Cir. 7/22/19), 2019 WL 3294958 at *3.

4

limits where AAIC's standing as an excess insurer—vis-à-vis the OCP policy—is contingent upon outside factors that may not trigger coverage under the OCP policy. Indeed, the parties do not dispute that the OCP policy provides coverage only in certain limited circumstances, e.g., if the Parish is found liable for negligent supervision of Fleming. This contingent determination of coverage, and the resulting credit that may be due to AAIC as excess insurer under its "other insurance" clause, can only be made after specific determinations of liability that must be left to the factfinder. *See Sumrall v. Bickham*, 03-2965 (La. App. 1 Cir. 9/8/04), 887 So.2d 73, 78, *writ denied*, 04-2506 (La. 1/7/05), 891 So.2d 696.[7]

Because we agree with plaintiffs that genuine issues of material fact remain, we grant plaintiffs' writ application and reverse that portion of the trial court's May 21, 2021 judgment that granted an additional $1 million credit to AAIC based on Amerisure's settlement with plaintiffs pursuant to its OCP policy.

**WRIT GRANTED,
JUDGMENT REVERSED IN PART**

Gretna, Louisiana, this 30th day of June, 2021.

**SMC
FHW
JGG**

---

[7] In *Sumrall v. Bickham*, 03-2965 (La. App. 1 Cir. 9/8/04), 887 So.2d 73, 77, *writ denied*, 04-2506 (La. 1/7/05), 891 So.2d 696, the plaintiff and the defendant/insured confected a settlement agreement in which the plaintiff reserved his rights against the defendant's (primary) insurer, Continental, and the defendant did not admit liability. Continental filed a motion for summary judgment arguing that its policy only obligates it to pay claims for which it is "legally liable." Because the defendant settled with the plaintiff, Continental argued that its insured, the defendant, could no longer be found "legally liable" for the plaintiff's injuries, and therefore its policy obligations could not be triggered. The court in *Sumrall* determined that where the plaintiff specifically reserved its rights to proceed against the defendant's insurer, where the defendant did not admit liability, and where the insurer was not a party to the settlement, the insurer could not benefit from the insured's release: "Continental should not now be able to claim the benefit of the agreement by declaring that it should automatically be dismissed from the lawsuit as a natural consequence of the release agreement stating that [insured] was denying all liability and that [plaintiff] was specifically reserving all rights 'without limitation' as to Continental." *Id.* at 78. The court also found, however, that Continental could not be independently liable to the plaintiff without the defendant "first being found [liable] by the trial court or a jury or by an acknowledgment of liability on the part of the insured." *Id.* (citing *Mallet v. Credo Oil & Gas*, 534 So.2d 126, 129-30 (La. App. 3 Cir. 1988), *writ denied*, 536 So.2d 1237 (La. 1989)).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **06/30/2021** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-C-271**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Shayna Beevers Morvant (DISTRICT JUDGE)
Guice A. Giambrone, III (Respondent)          Richard C. Trahant (Relator)
Jack E. Morris (Relator)                      Jacob K. Best (Respondent)
Jennifer L. Simmons (Respondent)              Tara E. Clement (Respondent)
                                              Jameson M. Taylor (Respondent)

### MAILED

Richard E. King (Respondent)                  William P. Worsley (Respondent)
Attorney at Law                               Attorney at Law
639 Loyola Avenue                             701 Poydras Street
Suite 2550                                    Suite 4800
New Orleans, LA 70113                         New Orleans, LA 70139

6/30/21

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

William P. Worsley
Attorney at Law
701 Poydras Street
Suite 4800
New Orleans, LA 70139
21-C-271                    06-30-21

9590 9402 2434 6249 3550 29

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 6304

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  GA 3025

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C-19

C. Date of Delivery

7/2

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt