WELCH, J.
 

 |2Plaintiffs, Chadwick Dukes and Dana Green on behalf of Skylah Dukes, appeal a judgment granting a motion for summary judgment filed by defendant, Imperial Fire and Casualty Insurance Company. We reverse and remand.
 

 BACKGROUND
 

 On June 8, 2007, a vehicle driven by Chadwick Dukes, in which his daughter, Skylah, was riding, and a vehicle driven by Paul Declouette collided on Louisiana Highway 983. On May 23, 2008, Dukes and Skylah’s mother, Dana Green, filed this lawsuit against Declouette, an unnamed insurer providing coverage to De-clouette, and USAgencies Insurance Company, Dukes’ underinsured motorist carrier, on behalf of Skylah, seeking to recover damages sustained by Skylah in the accident. Plaintiffs filed a supplemental petition adding Imperial Fire and Casualty Insurance Company (Imperial Fire), the insurer of Declouette, as a defendant in the litigation.
 

 Imperial Fire admitted that it had issued an automobile liability policy to De-clouette covering Declouette’s liability. Subsequently, plaintiffs filed a motion seeking to dismiss Declouette from the lawsuit. On November 20, 2008, the trial court entered judgment dismissing plaintiffs’ claims against Declouette, with preju
 
 *1233
 
 dice, reserving all rights against any and all other persons or parties named or unnamed.
 

 Imperial Fire filed a motion for summary judgment, acknowledging that it did have in force and effect a policy of automobile liability insurance which was issued to Declouette, but asserted that it could not be found liable as a matter of law because plaintiffs released its insured without a reservation of rights. In support of the motion for summary judgment, Imperial Fire attached a settlement agreement executed on February 19, 2008, entitled “PARENT-GUARDIAN RELEASE AND INDEMNITY AGREEMENT.” Therein, in consideration for the Instated sum, plaintiffs settled their daughter’s claims against Declouette, Direct General Insurance Company of Louisiana, the insurer of the vehicle Declouette was driving, and Sheryl Rogers, the owner of the vehicle. The agreement stated as follows:
 

 I/we, the undersigned parents/guardians of
 
 Sky’La Dukes,
 
 a minor, do forever release, acquit, discharge and covenant to hold harmless
 
 Direct General Insurance Company of Louisiana and Sheryl Royers and Paul Declouette,
 
 their heirs, successors and assigns of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries, which we may now or hereafter have as the parents of said minor, and also all claims or rights of action for damages which the said minor has or may hereafter have, either before or after she has reached her majority, resulting or to result from a certain accident which occurred on or about
 
 June 8, 2007 in West Baton Rouge Parish, LA.
 
 (Emphasis in original)
 

 Imperial Fire asserted that it was clear from the language of the release that plaintiffs failed to reserve rights against Declouette or any other party. Imperial Fire pointed to the language of the insurance policy, in which it agreed to pay damages for bodily injury for which “an
 
 insured person
 
 becomes legally responsible because of an
 
 accident
 
 arising out of the ownership, maintenance, or use of a
 
 covered vehicle.”
 
 (Emphasis added.) Imperial Fire urged that Declouette could never be found liable as a result of this accident because he was specifically released by way of settlement, and because Declouette could not become legally responsible for the accident in question, neither could his liability insurance carrier.
 

 On June 3, 2009, a peremptory exception raising the objection of
 
 res judicata
 
 was filed on behalf of Declouette on the basis of plaintiffs’ settlement of all claims on behalf of their child with Declouette and release of Declouette without a reservation of rights. The exception sought dismissal of all claims against Declouette with prejudice. However, as noted above, all of plaintiffs’ claims against Declouette had previously been dismissed, with prejudice, by the | atrial court.
 

 In opposition to the motion for summary judgment and the exception of
 
 res judica-ta,
 
 plaintiffs filed a memorandum in which they argued that they only intended to release Direct General, Rogers, the owner of the vehicle, and Declouette in his capacity as an omnibus insured of Direct General. They pointed out that the release document did not include any broad language showing any intent on their part to release any and all other parties liable as a result of the accident. Instead, plaintiffs urged, the release language was limited to Direct General, Sheryl Rogers, and Declouette, along with their heirs, successors and assigns. Plainly, plaintiffs asserted, there
 
 *1234
 
 was no intent on their part to release Imperial Fire from liability. Moreover, plaintiffs averred, Louisiana law no longer required an express reservation of rights against a solidary obligor, and therefore, the release of Declouette did not release Imperial Fire from liability based on De-clouette’s conduct in the accident. Plaintiffs insisted that they had a direct cause of action against Imperial Fire as a separate insurer of the acts of its insured, which could be maintained against Imperial Fire without naming Declouette as a party to the lawsuit. Lastly, they pointed out that in the judgment dismissing De-clouette as a party in the instant litigation, they specifically reserved their rights to proceed against other parties in the lawsuit, including Imperial Fire.
 

 Following a hearing, the trial court granted the peremptory exception of
 
 res judicata
 
 and the motion for summary judgment, dismissing all claims against Declouette and Imperial Fire with prejudice. The trial court expressed the opinion that because Declouette had been released from liability, Declouette could not be found to be legally liable for damages, and therefore, plaintiffs could not maintain an action against his insurer. This appeal, taken by plaintiffs, followed.
 

 \-JtES JUDICATA
 

 At the outset, we find that the trial court clearly erred in granting the exception of
 
 res judicata.
 
 At the time the exception was filed on behalf of Declouette, Declouette was no longer a party in this litigation, having been previously dismissed with prejudice by order of the court. Therefore, as to Declouette, the exception is clearly moot. Moreover, Imperial Fire could not raise the exception on its own as it was not a party to the release. It is well established that a claim of
 
 res judicata
 
 on a compromise agreement must be brought by a party to the compromise agreement.
 
 Carrie v. Louisiana Farm Bureau Casualty Insurance Company,
 
 2004-1001, p. 5 (La.App. 4th Cir.2/16/05), 900 So.2d 841, 844,
 
 unit denied,
 
 2005-0711 (La.5/6/05), 901 So.2d 1099. Because the exception was moot as to Declouette and Imperial Fire could not raise the plea of
 
 res judicata,
 
 the trial court erred in granting the exception.
 

 SUMMARY JUDGMENT
 

 A motion for summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In this appeal, we are asked to decide the legal effect of Declouette’s release with respect to plaintiffs’ rights against Imperial Fire. The issue presented is whether the release of Imperial Fire’s insured, Declouette, resulted in the discharge of Imperial Fire’s obligation under the policy of insurance to provide coverage for plaintiffs’ damages. This issue presents a question of law, which is appropriate for decision by summary judgment.
 
 Sumrall v. Bickham,
 
 2003-1252, p. 7 (La.App. 1st Cir.9/8/04), 887 So.2d 73, 78,
 
 unit denied,
 
 2004-2506 (La.1/7/05), 891 So.2d 696.
 

 Louisiana law establishes that the scope of a compromise agreement extends to the differences clearly contemplated by the parties, not to differences that the | (,parties never intended to include. La. C.C. art. 3073;
 
 Sumrall,
 
 2003-1252 at p. 6, 887 So.2d at 77. In the release agreement, plaintiffs clearly and unambiguously released Direct General, Sheryl Rogers, De-clouette, and “their heirs, successors and assigns” from liability for any causes of action arising out of the accident. There is
 
 *1235
 
 no broad language from which an intent to release any other parties could be construed from the language of the release. Therefore, our interpretation of the release agreement does not require an inquiry outside of the four corners of the document to ascertain intent.
 
 See Sumrall,
 
 2003-1252 at p. 7, 887 So.2d at 77. From the language of the agreement, we conclude that plaintiffs clearly did not intend to release Imperial Fire from liability.
 

 Nor did plaintiffs have to, as a matter of law, specifically reserve rights against Imperial Fire in order to maintain an action against Imperial Fire following the release of Declouette. Louisiana law has consistently held that a liability insurer and its insured are co-debtors in solido.
 
 Sumrall,
 
 2003-1252 at p. 10, 887 So.2d at 79. Former Louisiana Civil Code article 2203 provided that an obligee who remitted a debt in favor of one solidary obligor without expressly reserving his right against the others was deemed to have forfeited the entire obligation. However, this rule was abandoned in favor of the converse: the present law provides that when partial payment is received, solidary liability is preserved unless it is expressly renounced. La. C.C. art. 1802;
 
 Sumrall,
 
 2003-1252 at p. 1, 887 So.2d at 80 (Parro, J., concurring). Thus, Louisiana law no longer requires a reservation of rights be included in a release to protect a settling plaintiffs’ right to pursue his or her claims against non-settling solidary obligors.
 
 Sumrall,
 
 2003-1252 at pp. 1-2, 887 So.2d at 81 (Parro, J., concurring). Therefore, plaintiffs’ release of Declouette, without a reservation of rights against Imperial Fire, did not extinguish the solidary obligation.
 

 Having concluded that plaintiffs did not intend to release Imperial Fire from pliability and that the failure to specifically reserve rights against Imperial Fire when releasing its insured did not destroy the solidary obligation, we must decide what effect the release of Declouette had on Imperial Fire’s contractual obligation to pay any claim for which Declouette became “legally responsible.” In addressing this issue, both sides rely on cases from this circuit which they claim are determinative. Plaintiffs rely on
 
 Sumrall,
 
 while Imperial Fire insists that
 
 Boatman v. Gorman,
 
 2005-1369 (La.App. 1st Cir.2/7/06), 935 So.2d 696, writ
 
 denied,
 
 2006-0539 (La.5/5/06), 927 So.2d 323 is controlling.
 

 Sumrall
 
 involved a remand from the Louisiana Supreme Court for an “opinion
 
 solely
 
 on the issue of whether a plaintiffs settlement with an insured eliminates an insurer’s obligation to pay the plaintiff according to the terms that the policy would otherwise require.”
 
 Sumrall,
 
 2003-1252 at p. 5, 887 So.2d at 76. In
 
 Sumrall,
 
 the insurer made the identical argument asserted by Imperial Fire to the trial court and in this appeal. The insurer in
 
 Sum-rall
 
 argued that pursuant to the terms of the insurance contract, it was obligated to only pay claims for which its insured is “legally liable.” The insurer argued that because the plaintiff settled with and fully released the insured, a “natural consequence” of the release is that the insured could no longer be found legally liable for the plaintiffs injuries and therefore, the insurance policy could not be triggered. Imperial Fire insists that a clear reading of its policy shows that it only becomes liable for damages for which “an insured person becomes legally responsible” because of a covered accident, and because Declouette cannot be found legally responsible, due to the release executed by plaintiffs, neither can Imperial Fire.
 

 In
 
 Sumrall,
 
 this court held that an insured-tortfeasor could be “legally liable” for the victim’s damages, even though he cannot be cast in judgment due to his release from liability. Under the circum
 
 *1236
 
 stances of the case, this court concluded that the plaintiffs lawsuit against the non-settling insurer remained leviable despite the release of the insured tortfeasor. In so doing, this court relied on language in the settlement agreement in which plaintiff released the insured but reserved rights as to the insurer, as well as language indicating that payment was not to be construed as an admission of liability along with an express denial of liability. This court disagreed with the insurer’s assertion that it had no independent liability simply because its insured had been released pursuant to a pretrial settlement with the plaintiff. This court observed that the insurer was not involved in negotiating the settlement agreement between the plaintiff and the insured and should not be able to claim the benefit of the agreement by declaring it should automatically be dismissed from the lawsuit as a natural consequence of the release of its insured. This conclusion was especially compelling, this court stressed, in light of the clear language in the release agreement stating that the insured was expressly denying all liability, leaving the issue of legal liability yet to be determined, and language that the plaintiff was specifically reserving all rights “without limitation” as to the insurer.
 
 Sumrall,
 
 2003-1252 at pp. 9-11, 887 So.2d at 79-80.
 

 Additionally, this court observed, the Direct Action Statute creates solidary liability on the part of the insurer and the insured, although the solidary obligation arises from different sources, and that the statute was passed for the very purpose of protecting plaintiffs from insurers who attempt to avoid coverage after collecting premiums from insured-tortfeasors.
 
 Sumrail,
 
 2003-1252 at pp. 9-11, 887 So.2d at 79. Accordingly, this court held, the release of the insured did not bar the plaintiffs separate right to pursue the non-settling insurer through a direct action.
 

 Plaintiffs contend that the question of whether Imperial Fire can be cast in judgment where its insured has been released from liability has been addressed and answered by this court in
 
 Sumrall.
 
 Imperial Fire points out differences between |9the facts of this case and
 
 Sumrall,
 
 which it insists mandate a different result. First, it states that in a footnote in
 
 Sumrall,
 
 this court observed that it was important to note that the insurer was not an excess or uninsured motorist carrier, and therefore, the jurisprudence maintaining actions against excess insurers or uninsured motorists insurers after the insured-tortfea-sor had been released was not applicable. Imperial Fire claims that it is an excess insurer and urges that the distinction as to the type of insurer is of critical importance, but does not explain in what way. We note that it has long been held that a plaintiff-victim does not forfeit any right against his UM carrier by releasing the tortfeasor. See
 
 Martin v. Champion Insurance Company,
 
 95-0030, p. 13 (La.6/30/95), 656 So.2d 991, 999;
 
 Gaspard v. Allstate Insurance Company,
 
 2004-1502, p. 2 (La.App. 3rd Cir.5/4/05), 903 So.2d 518, 520,
 
 writ denied.,
 
 2005-1510 (La.12/16/05), 917 So.2d 1114.
 
 See also Buford v. Blanchard,
 
 2009-187, p. 5 (La.App. 3rd Cir.10/7/09), 19 So.3d 1255, 1260,
 
 writ denied,
 
 2009-2419 (La.2/26/10), 28 So.3d 270 (finding that a release of the tortfeasor and the primary insurer on the vehicle with a reservation of rights against all other parties did not release the insured’s excess carrier). Moreover, in the case of an excess insurer, it has long been held that the release of the insured and primary insurer did not extinguish the excess insurer’s obligation under its policy where the clear intent of the compromise was to release the primary insurer in consideration of the sums paid by it and the plaintiff reserved rights in the release to proceed against the excess insurer.
 
 Futch
 
 
 *1237
 

 v. Fidelity & Casualty Company of New York,
 
 246 La. 688, 166 So.2d 274 (1964);
 
 Wirick v. Wyble,
 
 300 So.2d 571 (La.App. 3d Cir.1974). Therefore, we plainly reject Imperial Fire’s implication that if the insurer in
 
 Sumrall
 
 was an excess, rather than a primary carrier, this court would have reached a different conclusion.
 

 Imperial Fire urges that the second distinction between this case and
 
 Sumrall
 
 is that the plaintiff in
 
 Sumrall
 
 specifically reserved rights against the | mtortfeasor’s liability insurer, naming the insurer in the release document, whereas in this case, there was no express reservation of rights as to the non-settling insurer. Of further significance, Imperial Fire urges, in
 
 Sum-rall,
 
 there was apparently never a determination of liability on behalf of the alleged tortfeasor, a fact stressed by this court throughout the opinion. However, in this case, Imperial Fire claims, there has been a determination of liability because the tortfeasor’s liability carrier made a payment exhausting its policy limits.
 

 Because of these distinctions, Imperial Fire submits that the
 
 Boatman
 
 case is on point and controls the resolution of the issue before this court. In
 
 Boatman,
 
 decided after
 
 Sumrall,
 
 the plaintiff was involved in an accident with a vehicle driven by Chad Rivere and owned by his employer, Doug Gorman. The plaintiff filed suit against Gorman and his insurer, State Farm. Thereafter, plaintiff settled with State Farm and signed a release discharging Gorman, Rivere and State Farm with no reservation of rights. The plaintiff later amended her petition to add as defendants Doug Jackson, the owner of the vehicle in which she was riding as a guest passenger, and the owner’s uninsured motorist insurer, USAgeneies. Thereafter, the plaintiff dismissed Gorman and State Farm with prejudice and reserved all rights against USAgeneies and all parties, whether named or unnamed. Finally, the plaintiff filed a third amended petition naming USAgeneies as the insurer of Riv-ere pursuant to the Direct Action Statute. USAgeneies filed an exception of no right of action, which was overruled by the trial court after considering the exception within the confines of
 
 Sumrall.
 
 This court reversed, holding that under the circumstances of that case, once the insured, Rivere, had been released, there was no cause of action against him or his insurer under the express terms of the release. In so doing, this court noted that the insured was not mentioned in the motion to dismiss filed in the - litigation, was never named in the petition, and had been released in the settlement documents without any Inreservation of rights against his insurer.
 
 Boatman,
 
 2005-1369 at p. 2, 935 So.2d at 698.
 

 We find
 
 Boatman
 
 to be distinguishable from the case before us. In Boatman, the plaintiff released the insured without any reservation of rights against his insurer and did not name the insured as a party to the action. Under these circumstances, this court held that the plaintiff had no cause of action to proceed directly against the insurer. However, in this case, plaintiffs joined the insured as a party to the litigation, and when dismissing the insured, specifically reserved rights against all other parties in the litigation. Under these circumstances, plaintiffs procedurally preserved their right to proceed against Imperial Fire following the dismissal of its insured from the litigation.
 

 While
 
 Sumrall
 
 is distinguishable from this case in some respects, we find that the pronouncements of this court in
 
 Sumrall
 
 apply with equal force to the instant case. Although plaintiffs did not specifically reserve the right to proceed against Imperial Fire in the settlement, it is evident that they intended to release Direct General
 
 *1238
 
 and Declouette in his capacity as an insured under that policy of insurance in consideration of the sums paid by Direct General. Imperial Fire was in no way involved in negotiating the settlement agreement between plaintiffs and De-clouette and was not a party to the compromise. It should not now be able to claim the benefit of the agreement by claiming that the absence of a specific reservation of rights automatically entitles it to a dismissal from the lawsuit as a natural consequence of the release of its insured. Additionally, Louisiana law no longer requires that a reservation of rights be included in a release to protect a settling plaintiffs right to pursue his or her claims against non-settling obligors.
 
 Sum-mil,
 
 2003-1252 at pp. 1-2, 887 So.2d at 81 (Parro, J. concurring).
 

 Furthermore, this court squarely rejected the argument that the release of an insured automatically extinguishes the insurer’s contractual obligation to pay | ^damages caused by the insured’s conduct in
 
 Sumrall.
 
 In so doing, this court observed that the term “legally liable” means “[l]iable under law as interpreted by courts.”
 
 Sumrall,
 
 2003-1252 at p. 9, 887 So.2d at 79. Similarly, the Imperial Fire policy imposes liability on Imperial Fire for the damages for which its insured become “legally responsible.” The release document does not acknowledge liability on Declouette’s part. We decline to construe the absence of language regarding liability in the release document to constitute a legal admission of liability, as Imperial Fire suggests.
 

 For all these reasons, we conclude that by entering into the settlement agreement and releasing Declouette and Direct General, plaintiffs waived their right to pursue Declouette personally and his settling insurer for a money judgment in a judicial proceeding, but did not waive the right to have Declouette’s liability judicially adjudicated for the purpose of pursuing a claim against Declouette’s nonsettling insurer. We hold that the settlement agreement between plaintiffs and Declouette did not bar plaintiffs’ separate right to pursue De-clouette’s non-settling insurer, Imperial Fire. Therefore, we find that the trial court erred in granting Imperial Fire’s motion for summary judgment.
 

 CONCLUSION
 

 For the foregoing reasons, that portion of the judgment sustaining the peremptory exception of
 
 res judicata
 
 is reversed as moot. The summary judgment rendered in favor of Imperial Fire & Casualty Insurance Company is hereby reversed and the case is remanded for proceedings consistent with this opinion. All costs of this appeal are assessed to appellee, Imperial Fire and Casualty Insurance Company.
 

 REVERSED AND REMANDED.